JAHALA S. WRIGHT v. A. J. WRIGHT

No. 61

(Filed 10 May 1972)

1. Evidence § 12; Divorce and Alimony § 16; Rules of Civil Procedure
§ 33— interrogatories — sexual intercourse between husband and wife
— confidential communications

In the wife's action for alimony and alimony *pendente lite*, the
wife may not be compelled to answer interrogatories which seek to
elicit her answers under oath as to acts of sexual intercourse between
the husband and wife, since such an act is a "confidential communica-
tion" within the meaning of G.S. 8-56.

2. Divorce and Alimony § 14; Evidence § 12— adultery — competency of
spouse to testify

Because of the provisions of G.S. 8-56 and G.S. 50-10, neither
the husband nor the wife is a competent witness in any action
*inter se* to give evidence for or against the other in any action or
proceeding in consequence of adultery, or in any action or proceeding
for divorce on account of adultery, and may not be compelled to give
such evidence.

3. Divorce and Alimony § 14; Evidence § 12 —action in consequence of
adultery — plea of adultery

The husband's interposition of the plea of adultery in the wife's
action for alimony and alimony *pendente lite* converted the action into
an "action or proceeding in consequence of adultery" within the
meaning of G.S. 8-56.

4. Divorce and Alimony § 14; Evidence § 12; Rules of Civil Procedure
§ 33— interrogatories — adultery of husband or wife — actions inter se

Rules of Civil Procedure 33 and 26(b) do not require the husband
or wife in actions *inter se* to answer interrogatories relating to acts of
adultery or conduct from which adultery might be implied during the
subsistence of their marriage, the provisions of G.S. 8-56 and G.S.
50-10 being applicable to interrogatories as well as to testimony at
trial.

5. Evidence § 51; Parent and Child § 1— blood-grouping tests — paternity
— civil and criminal actions

In both criminal and civil actions in which the issue of paternity
arises, the results of blood-grouping tests must be admitted in evidence
when offered by a duly licensed practicing physician or other qualified
person, regardless of any presumptions with respect to paternity, and
such evidence is competent to rebut any presumptions of paternity.
G.S. 8-50.1.

6. Evidence § 51; Parent and Child § 1— paternity — right to blood-
grouping test

In plaintiff-wife's action for alimony, alimony *pendente lite* and
child support, defendant-husband was entitled under G.S. 8-50.1 to an

order for a blood-grouping test where plaintiff alleged and defendant denied that he was the father of a child born to plaintiff during the subsistence of the marriage.

**7. Divorce and Alimony § 14; Evidence § 51; Parent and Child § 1— blood-grouping tests — issues of paternity and adultery**

In a case in which issues of paternity and adultery are raised, evidence of the results of blood-grouping tests excluding the husband as the father of a child born during the subsistence of the marriage is competent on both the issue of paternity and the issue of adultery.

ON appeal by defendant under G.S. 7A-30(2) from the decision of the Court of Appeals reported in 11 N.C. App. 190, 180 S.E. 2d 369, docketed and argued as No. 46 at Fall Term 1971.

Plaintiff-wife instituted this action on November 14, 1969. She alleged that she had separated herself from defendant-husband because he had offered such indignities to her person as to render her condition intolerable and her life burdensome. Answering, defendant denied the essential allegations on which plaintiff based her claim; and, in a further answer and defense, alleged facts with reference to plaintiff's conduct toward him which he contended constituted a bar to her action. These charges and counter charges are not germane to decision on this appeal.

Plaintiff prayed for custody of and support for Sidney Cullen Wright, alimony and possession of the family dwelling, and for subsistence and counsel fees *pendente lite*.

Plaintiff alleged that she and defendant were married on August 7, 1948; that three children were born of the marriage, Joseph Dewey Wright, age 20 (born July 13, 1949); Brenda Kathryn Wright, age 18 (born October 7, 1951); and *Sidney Cullen Wright*, age 2 *(born December 5, 1966)*.

In Paragraph 4 of his *original* answer, which was filed January 27, 1970, defendant admitted the allegations of plaintiff set out in the preceding paragraph hereof; in Paragraph 11 he asserted that "defendant certainly admits that Sidney Cullen Wright is entitled to support from him, regardless of the court's decision relative to custody of the said child"; in Paragraph 18 of his further answer and defense he asserted that "defendant is a fit and proper person to have the custody of Sidney Cullen Wright, and the best interests of the said child

will be served by awarding his custody to the defendant"; and in Paragraph 1 of his prayer for relief he asked that "[t]he court award the custody of Sidney Cullen Wright to the defendant herein."

Defendant also filed on January 27, 1970, "Interrogatories to Plaintiff" in which he called for answers to sixty-five interrogatories. On January 29, 1970, plaintiff filed an "Objection to Interrogatories," in which she moved that "she not be required to answer" Nos. 20 through 33 and Nos. 36 through 51.

The thirty interrogatories to which plaintiff objected contained numerous sub-questions. Generally, defendant called upon plaintiff to answer under oath and in detail questions relating to the following: whether the child born on December 5, 1966, was conceived between February 25, 1966, and March 25, 1966; whether she had sexual intercourse with her husband during the period from January 1, 1966, to March 25, 1966, and the date of each act of intercourse during this period; whether she was absent from the family residence during the evening hours or overnight during the period from November 5, 1965, through March 25, 1966; whether she was acquainted and to what extent she had associated with each of three named men; and whether she had committed adultery at any time during her marriage to defendant and, if so, the date of each adulterous act and the name and address of each man with whom she had committed adultery.

On February 10, 1970, District Court Judge A. A. Webb, allowing defendant's motion therefor, ordered that plaintiff, Sidney Cullen Wright, and defendant, submit to a blood-grouping test as provided by G.S. 8-50.1. Judge Webb made no ruling at that time on plaintiff's objections to the enumerated interrogatories. The report of Dr. W. M. Summerville, clinical pathologist, which was filed February 24, 1970, sets forth that he performed the tests on February 18 and 20, 1970, and that "[a]ccording to [his] findings and the hereditary blood pattern, A. J. Wright is excluded as a parent of Sidney Cullen Wright."

On April 3, 1970, defendant moved for leave to amend his answer so as to delete admissions that he was the father of Sidney Cullen Wright and to plead adultery of plaintiff in bar of her right to recover in this action. Judge Webb's order granting defendant's motion for leave to amend and the amendment itself were filed on April 3, 1970.

In an order dated April 21, 1970, Judge Webb directed plaintiff "to answer each and every interrogatory . . . within ten (10) calendar days from the date of this order."

[Motions and orders with reference to placing the interrogatories in a sealed container and in the protective custody of the clerk are not set forth because not germane to any of the questions before us on appeal.]

In a motion filed May 18, 1970, plaintiff moved (1) that the court adjudge void its prior order for blood-grouping tests; (2) that the report of the blood-grouping tests be removed from the record; (3) that the court strike the amendment to the answer; (4) that defendant's motion of May 15, 1970, [referred to below] be denied; (5) that plaintiff's "Objection to Interrogatories" be sustained; (6) that the court set the case peremptorily for hearing on plaintiff's prayer for relief; and (7) for "such other and further relief to which plaintiff may be entitled."

In his motion of May 15, 1970, defendant moved that the court, because of plaintiff's failure to answer the interrogatories, treat as established thirteen specific factual matters set forth in the motion.

In a motion filed June 15, 1970, because of the intervening death of Dr. W. M. Summerville, defendant moved that the court order that plaintiff, the child and defendant submit themselves again for a blood-grouping test.

In an order dated June 9, 1970, filed June 16, 1970, Judge Webb directed plaintiff "to answer each and every interrogatory propounded, under oath, before June 19, 1970, and serve a copy on counsel for defendant before June 19, 1970," but denied "at this time" defendant's motion of May 15, 1970; and, with this exception, he denied each of the several prayers for relief set forth by plaintiff in her motion of May 18, 1970. Plaintiff excepted specifically to each adverse ruling.

In a supplementary order dated June 9, 1970, filed June 16, 1970, Judge Webb, allowing defendant's motion therefor, ordered that defendant, plaintiff and Sidney Cullen Wright appear at a designated time and place before a designated technician and then and there submit to a blood-grouping test. Plaintiff excepted.

Wright v. Wright

Plaintiff's appeal to the Court of Appeals was from the two orders entered on June 9, 1970, and the denial of plaintiff's motions made on May 18, 1970.

In an opinion by Judge Morris, with which Judge Vaughn concurred and from which Judge Brock dissented, the Court of Appeals reversed the order of Judge Webb requiring plaintiff, the child and defendant to submit themselves again for a blood-grouping test. Because of the dissent, defendant appeals of right to the Supreme Court.

*Clark, Huffman & Griffin, by Robert L. Huffman, for plaintiff appellee.*

*Thomas & Harrington, by L. E. Harrington, for defendant appellant.*

BOBBITT, Chief Justice.

In her appeal from the District Court to the Court of Appeals, plaintiff asserted that Judge Webb erred (1) by ordering her to answer the interrogatories, and (2) by ordering that she, the child and defendant submit to a blood-grouping test. The Court of Appeals made no ruling in respect of the order requiring plaintiff to answer the interrogatories. It reversed the order for the blood-grouping test.

ORDER REQUIRING ANSWERS TO INTERROGATORIES

G.S. 50-16.6(a) provides: "Alimony or alimony pendente lite shall not be payable when adultery is pleaded in bar of demand for alimony or alimony pendente lite, made in an action or cross action, and the issue of adultery is found against the spouse seeking alimony, but this shall not be a bar to reasonable counsel fees."

Defendant pleaded adultery in bar of plaintiff's demand for alimony *pendente lite* and alimony. Whether the court should allow alimony *pendente lite* depends upon its answer to the issue raised by defendant's plea. Judge Webb deferred decision on this issue pending the availability of evidence resulting from compliance with his orders. By order dated June 9, 1970, Judge Webb allowed a fee of $1,200.00 to plaintiff's counsel for his services to that date. No order for the payment of alimony *pendente lite* has been entered.

The purpose of Interrogatories Nos. 20 through 33 and Nos. 36 through 51 is to elicit answers under oath which tend to show (1) that plaintiff had committed adultery, and (2) that defendant is not the father of the child born December 5, 1966. Evidence that defendant is not the father of her child would be evidence of plaintiff's adultery; but evidence of her adultery, except at a time when the child was or may have been conceived, would not be evidence that defendant is not the father of the child.

May one spouse, by filing interrogatories in the manner provided by Rule 33 of the Rules of Civil Procedure, G.S. 1A-1, compel disclosure by the other under oath of acts of adultery committed by him or by her during the subsistence of their marriage? Defendant contends that this question must be answered in the affirmative, basing his contention primarily on Rules 33 and 26(b) of the Rules of Civil Procedure, G.S. 1A-1. Plaintiff contends that this question must be answered in the negative, basing her contention primarily on G.S. 8-56 and G.S. 50-10.

Defendant points out that Rule 33 provides that interrogatories to parties "may relate to any matters which can be inquired into under Rule 26(b)," and that Rule 26(b) provides that "the deponent may be examined regarding any matter, not privileged, which is relevant to subject matter in the pending action . . . . " Obviously, answers to the interrogatories to which plaintiff objects are relevant to the issues raised by defendant's pleading. The question is whether, because of the statutory provisions quoted and discussed below, a spouse has the privilege not to answer interrogatories relating specifically to his or her adultery or to facts from which adultery might be implied.

G.S. 8-56 provides: "In any trial or inquiry in any suit, action or proceeding in any court, or before any person having, by law or consent of parties, authority to examine witnesses or hear evidence, the husband or wife of any party thereto, or of any person in whose behalf any such suit, action or proceeding is brought, prosecuted, opposed or defended, shall, *except as herein stated,* be competent and compellable to give evidence, as any other witness on behalf of any party to such suit, action or proceeding. *Nothing herein shall render any husband or wife competent or compellable to give evidence for or against the other in any action or proceeding in consequence of adultery, or*

Wright v. Wright

*in any action or proceeding for divorce on account of adultery;* or in any action or proceeding for or on account of criminal conversation, except that in actions of criminal conversation brought by the husband in which the character of the wife is assailed she shall be a competent witness to testify in refutation of such charges: Provided, however, that in all such actions and proceedings, the husband or wife shall be competent to prove, and may be required to prove, the fact of marriage. *No husband or wife shall be compellable to disclose any confidential communication made by one to the other during their marriage.*" (Our italics.)

G.S. 50-10 provides: "The material facts in every complaint asking for a divorce shall be deemed to be denied by the defendant, whether the same shall be actually denied by pleading or not, and no judgment shall be given in favor of the plaintiff in any such complaint until such facts have been found by a jury, *and on such trial neither the husband nor wife shall be a competent witness to prove the adultery of the other, nor shall the admissions of either party be received as evidence to prove such fact.* Notwithstanding the above provisions, the right to have the facts determined by a jury shall be deemed to be waived in divorce actions based on a one-year separation as set forth in G.S. 50-5 (4) or 50-6, where defendant has been personally served with summons, whether within or without the State, or where the defendant has accepted service of summons, whether within or without the State, or when service has been made upon the defendant by registered mail as provided in the Rules of Civil Procedure, unless such defendant, or the plaintiff, files a demand for a jury trial with the clerk of the court in which the action is pending, as provided in the Rules of Civil Procedure.

"In all divorce actions tried without a jury as provided in this section the presiding judge shall answer the issues and render judgment thereon." (Our italics.)

"At common law husband and wife were absolutely incompetent to testify in an action to which either was a party, . . . ." Stansbury, North Carolina Evidence, § 58 (2d ed. 1963). The first sentence of G.S. 8-56 removed this disqualification by providing, with explicit exceptions, that husband and wife are both competent and compellable to testify as any other witness on behalf of any party to the action.

In determining whether a husband or wife is *a competent witness* to prove the adultery of the other, the quoted statutes (including prior statutes from which they are derived) being *in pari materia,* have been construed together. Based largely upon the requirement of G.S. 50-10 that "no judgment shall be given in favor of the plaintiff in any such [divorce] complaint until such facts have been found by a jury," which was absolute prior to the 1963 amendment, this Court held that the primary purpose in restricting the husband's or wife's competency and in prohibiting "the admissions of either party" to prove the fact of his or her adultery, was to obviate the risk of and opportunity for collusive divorces. *Moss v. Moss,* 24 N.C. 55 (1841) ; *Hansley v. Hansley,* 32 N.C. 506 (1849) ; *Perkins v. Perkins,* 88 N.C. 41 (1883) ; *Hooper v. Hooper,* 165 N.C. 605, 81 S.E. 933 (1914) ; *Becker v. Becker,* 262 N.C. 685, 138 S.E. 2d 507 (1964) ; *Hicks v. Hicks,* 275 N.C. 370, 167 S.E. 2d 761 (1969). As pointed out by Justice Walker, "husbands and wives are incompetent to give evidence only where they testify 'for or against each other' in the class of cases specified" in the statute now codified as G.S. 8-56. *Powell v. Strickland,* 163 N.C. 393, 399, 79 S.E. 872, 874 (1913). Where the husband sued for divorce on the ground of adultery and offered as witnesses two men who testified they had engaged in adulterous acts with the wife, the wife was not prohibited from testifying in defense of herself. *Broom v. Broom,* 130 N.C. 562, 41 S.E. 673 (1902). Too, where the husband sued for divorce on the ground of adultery and the wife pleaded his condonation by engaging in sexual intercourse with her, the husband was permitted to testify in his own defense in contradiction of the wife's allegations and evidence as to condonation. *Biggs v. Biggs,* 253 N.C. 10, 116 S.E. 2d 178 (1960).

No attempt will be made here to reconcile our decisions involving *the competency* of a husband or wife to testify in a suit against a third party for criminal conversation with reference to alleged adulterous conduct of the defendant and the non-party spouse. Decisions which deal with this type of factual situation include the following: *Grant v. Mitchell,* 156 N.C. 15, 71 S.E. 1087 (1911) ; *McCall v. Galloway,* 162 N.C. 353, 78 S.E. 429 (1913) ; *Powell v. Strickland, supra; Knighten v. McClain,* 227 N.C. 682, 44 S.E. 2d 79 (1947).

[1] With specific reference to interrogatories which seek to elicit plaintiff's answers under oath as to acts of sexual inter-

course between plaintiff and defendant, it is sufficient to say: G.S. 8-56 provides that "[n]o husband or wife shall be *compellable* to disclose any confidential communication made by one to the other during their marriage." (Our italics.) "[A]n act of intercourse between husband and wife is a confidential communication." *Biggs v. Biggs, supra* at 16, 116 S.E. 2d at 183.

[2]  Construing G.S. 8-56 and G.S. 50-10 together, we hold that neither the husband nor the wife is *a competent witness* in any action *inter se* to give evidence for or against the other in any action or proceeding in consequence of adultery, or in any action or proceeding for divorce on account of adultery, *and may not be compelled* to give such evidence.

[3]  This is an action between husband and wife. While in form an affirmative defense, we think interposition of the plea of adultery converted this into an "action or proceeding in consequence of adultery" within the meaning of G.S. 8-56. To hold otherwise would be to substitute form for substance.

[4]  The District Court has not acted on plaintiff's application for alimony *pendente lite*. A finding of fact that plaintiff had committed adultery would defeat plaintiff's right thereto. The purpose of Interrogatories Nos. 20 through 33 and Nos. 36 through 51 is to compel answers which will or may tend to prove the adultery of plaintiff or disclose facts pertinent thereto. If plaintiff is required to give answers which will or may incriminate her in respect of adultery, plaintiff would be compelled "to give evidence for" defendant within the meaning of G.S. 8-56. We further hold that the provisions of G.S. 8-56 and G.S. 50-10 which render a husband or wife an incompetent witness apply to answers to interrogatories as well as to testimony at trial.

Plaintiff is not a competent witness to give evidence for defendant in this action. She is exempted from giving such evidence either at trial or before trial. The provision of Rule 26(b) that "[i]t is not ground for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence" refers only to testimony that will or might be inadmissible at trial. The statutes construed above relate to the disqualification of husband or wife as a *witness* with reference to specific matters, not to the admissibility or inadmissibility of the testimony of a qualified witness.

Prior to the Rules of Civil Procedure, G.S. 1A-1, the statutory procedure for the examination of an adverse party before trial was set forth in Article 46 of Chapter 1 of the General Statutes (Recompiled 1953). We find no decision based thereon or on the Rules of Civil Procedure which relate to a pretrial adverse examination of one spouse by the other or to interrogatories by one spouse to the other concerning matters such as those involved in the interrogatories under consideration.

We note that our Rules of Civil Procedure are modeled after the Federal Rules and in most instances are verbatim copies with the same enumerations. *Sutton v. Duke,* 277 N.C. 94, 176 S.E. 2d 161 (1970). Ordinarily, we look to federal decisions for guidance in the interpretation and application of our corresponding rule. However, since the federal courts do not try divorce actions, federal decisions are not germane in respect of the application of Rules 33 and 26(b) to the factual situation now under review.

In our view, the General Assembly, in enacting the Rules of Civil Procedure, did not contemplate that Rules 33 and 26(b) would enable the husband and the wife in actions between them to require the other to answer interrogatories relating to acts of adultery or conduct from which adultery might be implied during the subsistence of their marriage. We are quite sure the General Assembly did not intend in such manner to remove the cloak of privacy surrounding the confidential relationships of husband and wife.

For the reasons stated above, the order requiring plaintiff "to answer each and every interrogatory," to the extent it requires plaintiff to answer Interrogatories Nos. 20 through 33 and Nos. 36 through 51, should be reversed.

### ORDER REQUIRING BLOOD-GROUPING TESTS

The validity of Judge Webb's order requiring plaintiff, the child and defendant to submit to blood-grouping tests depends largely upon the interpretation to be given the provisions of G.S. 8-50.1.

G.S. 8-50.1 provides: "Competency of evidence of blood tests.—In the trial of any criminal action or proceedings in any court in which the question of paternity arises, *regardless of any presumptions with respect to paternity,* the court before whom

Wright v. Wright

the matter may be brought, upon motion of the defendant, shall direct and order that the defendant, the mother and the child shall submit to a blood grouping test; provided, that the court, in its discretion, may require the person requesting the blood grouping test to pay the cost thereof. The results of such blood grouping tests shall be admitted in evidence when offered by a duly licensed practicing physician or other qualified person. *Such evidence shall be competent to rebut any presumptions of paternity.*

"In the trial of any civil action, the court before whom the matter may be brought, upon motion of either party, shall direct and order that the defendant, the plaintiff, the mother and the child shall submit to a blood grouping test; provided, that the court, in its discretion, may require the person requesting the blood grouping test to pay the cost thereof. The results of such blood grouping tests shall be admitted in evidence when offered by a duly licensed practicing physician or other duly qualified person." (Our italics.)

With the exception of the italicized portions, G.S. 8-50.1 is a codification of Chapter 51 of the Session Laws of 1949, captioned "AN ACT TO AMEND CHAPTER 8 OF THE GENERAL STATUTES RELATIVE TO THE COMPETENCY OF CERTAIN EVIDENCE IN CIVIL AND CRIMINAL ACTIONS." The italicized portions were incorporated in G.S. 8-50.1 by Chapter 618 of the Session Laws of 1965, captioned "AN ACT TO AMEND AND CLARIFY G.S. 8-50.1 RELATING TO COMPETENCY OF EVIDENCE OF BLOOD TESTS."

Rule 35(a) of the Rules of Civil Procedure, G.S. 1A-1, provides: "In an action in which . . . the blood relationship of a party, . . . or a person in the custody or under the legal control of a party, is in controversy, a judge of the court in which the action is pending . . . may order the party to submit to a . . . blood examination by a physician, or to produce for such examination . . . the person in his custody or legal control. The order may be made only on motion for good cause shown. . . . "

[5] G.S. 8-50.1 requires blood-grouping tests only in actions "in which the question of paternity arises." Since the sole purpose of the blood-grouping tests is to procure scientific evidence relating to the paternity of the child, we think it clear that the clause "in which the question of paternity arises," although it appears only in the first paragraph of G.S. 8-50.1, is equally applicable

to both criminal and civil actions. We hold that the provisions of G.S. 8-50.1 were intended to apply alike in civil and criminal actions except in those particulars involving procedural differences. Such procedural differences include the following: (1) In criminal actions, the motion for the blood-grouping tests must be made by the defendant. In civil actions, the motion for the blood-grouping tests may be made by either party. (2) In criminal actions, the order directs the defendant, the mother and the child to submit to the blood-grouping tests. In civil actions, it is provided that the court "shall direct and order that the defendant, the plaintiff, the mother and the child shall submit to a blood-grouping test." The General Assembly, in providing for an order for *four* blood-grouping tests in civil actions, may have anticipated a husband's action for criminal conversation in which the blood-grouping tests might necessarily include the plaintiff and the defendant, his wife's alleged paramour. While the structure of G.S. 8-50.1 is not all that one might desire, we are of opinion and hold that in both criminal and civil actions in which the question of paternity arises, the results of such blood-grouping tests must be admitted in evidence when offered by a duly licensed practicing physician or other qualified person, "regardless of any presumptions with respect to paternity," and that "[s]uch evidence shall be competent to rebut any presumptions of paternity."

No civil action involving G.S. 8-50.1 has ever been considered by this Court. G.S. 8-50.1 has been considered only in criminal prosecutions under G.S. 49-2 for alleged wilful failure to support an illegitimate child. *State v. Davis,* 272 N.C. 102, 157 S.E. 2d 671 (1967) ; *State v. Fowler,* 277 N.C. 305, 177 S.E. 2d 385 (1970).

The Court of Appeals reversed the order requiring plaintiff, the child and defendant to submit to a blood-grouping test because it interpreted our decision in *Eubanks v. Eubanks,* 273 N.C. 189, 159 S.E. 2d 562 (1968), as a clear holding that "the results of a blood-grouping test cannot be used to establish non-paternity if there was access; . . . . "

"The law discussed in any opinion is set within the framework of the facts of that particular case . . . . " *Light Co. v. Moss,* 220 N.C. 200, 208, 17 S.E. 2d 10, 16 (1941). *Eubanks* did not involve a blood test. No question with reference thereto was raised or considered.

Wright v. Wright

In *Eubanks*, the action was instituted March 21, 1966, by the plaintiff-husband for an absolute divorce on the ground of separation for one year. The defendant-wife answered and alleged a cross action for alimony without divorce and for custody and support of a child born to her on January 7, 1966. In his reply, the plaintiff denied the paternity of this child. The court found fundamental error in the irreconcilable answers to the third and fourth issues submitted to the jury. Answering the third issue, pursuant to a peremptory instruction, the jury found that the plaintiff and the defendant had lived "separate and apart from each other continuously for more than one year next preceding the institution of this action," as alleged in the complaint. Answering the fourth issue, the jury found that the plaintiff was the father of the child born to the defendant on January 7, 1966, as alleged in the defendant's cross action. The opinion states: "On this record, the law presumes that plaintiff is the father of Rhonda and that she was conceived on or about 3 April 1965, a time within the year next preceding the institution of the action." The Court further stated: "On this record, the third and fourth issues may not each be answered YES, and the court should have instructed the jury that if they answered the third issue YES, they would answer the fourth issue No." The crucial issue was whether the plaintiff and the defendant had in fact lived separate and apart continuously during the year next preceding March 21, 1966.

The opinion in *Eubanks* contains this statement: "If there was access, there is a conclusive presumption that the child was lawfully begotten in wedlock." *Eubanks v. Eubanks, supra* at 197, 159 S.E. 2d at 568. Taken literally and out of context, the quoted statement would disallow evidence even of impotency or physical or racial differences to rebut the presumption. However, the topic sentence of the paragraph in which the above statement is found demonstrates the real rationale of the rule: "When a child is born in wedlock, the law presumes it to be legitimate, and this presumption can be rebutted only by facts and circumstances which show that the husband could not have been the father, *as that* he was impotent or could not have had access to his wife." (Our italics.) Impotency and nonaccess are set out therein as *examples* of types of evidence that would "show that the husband could not have been the father." Since the results of blood-grouping tests would be significant only if they tended to show that defendant herein could not have been

the father, we find nothing in *Eubanks* that would preclude their admission in evidence.

"A child born in wedlock is presumed to be legitimate, and the presumption can be rebutted only by proof that the husband could not have been the father, as by showing that he was impotent, or that he could not have had access to the mother during the period when conception must have occurred, or that the husband and wife were white and the child of mixed blood." Stansbury, North Carolina Evidence, § 246 (2d. ed. 1963).

Professor Stansbury refers to this presumption as "one of the strongest known to the law," and states, as indicated above, that it may be rebutted only by proof that the husband *could not have been* the father. Prior to the discovery and perfection of the blood-grouping test, the only kinds of evidence which showed to even an approximate certainty that a husband was not the father of his wife's child were evidence of impotency, racial or other distinctive physical differences, or nonaccess during the probable time of conception. Although we continue to recognize its primary importance in preserving the status of legitimacy of children born in wedlock, this presumption must give way before dependable evidence to the contrary. Blood-grouping tests which show that a man cannot be the father of a child are perhaps the most dependable evidence we have known. See Note, 50 N.C.L. Rev. 163 (1971).

[6] The issue of paternity arises herein from plaintiff's allegation that defendant is the father of Sydney Cullen Wright and defendant's denial thereof. Under G.S. 8-50.1, defendant was entitled to the order for the blood-grouping test.

The record discloses no facts sufficient to estop defendant from raising the issue of paternity. It may be that the putative father of a child conceived or born during wedlock should be estopped to raise the issue of paternity unless he does so within a fixed time. However, this is a matter for consideration by the General Assembly.

[7] Assuming the blood-grouping tests are made and offered in evidence by qualified persons, the results thereof, if they tend to exclude defendant as the father of the child, may be offered in evidence to rebut the common-law presumption of legitimacy. Ordinarily, such evidence is competent solely in relation to the issue of paternity. If the results of the blood-grouping tests ex-

clude defendant as the father of a child admittedly born during the subsistence of the marriage, may the evidence also be considered upon the separate issue of plaintiff's alleged adultery? While there is no authority for blood-grouping tests unless an issue of paternity is raised, in a case such as the present, in which the issue of paternity is raised, the results of the blood-grouping tests, if they exclude defendant as the father of a child admittedly born during the subsistence of the marriage, also would be evidence of adultery. In resolving this question, we must take the case as we find it.

When, as in the present case, issues of paternity and of adultery are raised, it would be unrealistic to hold that the evidence of the results of the blood-grouping tests is competent on the issue of paternity but not on the issue of adultery. Moreover, it would be virtually impossible for the District Court Judge, when passing upon the application for alimony and child support *pendente lite,* to consider the results of the blood-grouping tests as related to child support *pendente lite* but not as to alimony *pendente lite.*

For the reasons stated, the decision of the Court of Appeals, which reversed Judge Webb's order for the blood-grouping tests, is reversed.

The cause is remanded to the Court of Appeals with directions that it enter a judgment (1) reversing Judge Webb's order with reference to interrogatories, to the extent it requires plaintiff to answer Interrogatories Nos. 20 through 33 and Nos. 36 through 51, and (2) affirming the order of Judge Webb which requires the blood-grouping tests.

Reversed and remanded.