WAKE COUNTY, EX REL. HELEN MANNING v. JAMES GREEN

No. 8110DC14

(Filed 7 July 1981)

1. **Parent and Child § 1.1—presumption of legitimacy of child—rebuttal**

    In a civil paternity action a plaintiff is not required to show that the husband could not have had access to the wife, but that he did not have access, and where the spouses are living apart, the presumption of legitimacy will be rebutted unless there is a fair and reasonable basis in light of experience and reason to find that they have engaged in sexual relations.

2. **Parent and Child § 1.2— legitimacy of child—nonaccess—parents' testimony admissible**

    In a civil paternity action a husband and wife may testify concerning nonaccess to each other, since the testimony of a spouse on the matter of nonaccess is clearly the best evidence of that fact.

3. **Parent and Child § 1.2— presumption of legitimacy rebutted—issue of paternity raised**

    Where plaintiff testified that she had not seen her husband in five years and that she had had sexual relations only with defendant during the time period in which conception occurred, a child support investigator with the Wake County Department of Social Services testified that she had investigated in both N.C. and in the plaintiff's husband's home state of N.J. and was unable to locate him, and there was no evidence that plaintiff's husband had ever been in N.C., the presumption of legitimacy was clearly rebutted and a determination of paternity should be made from all of the facts and circumstances in the case.

APPEAL by plaintiff Wake County from *Bullock, Judge.* Judgment entered 14 October 1980 in District Court, WAKE County. Heard in the Court of Appeals 2 June 1981.

This action was instituted upon the complaint of the Wake County Child Support Enforcement Agency on behalf of the plaintiff Helen Manning pursuant to Article 9 of G.S. Chapter 110 and Article 3 of G.S. Chapter 49. The complaint alleges that the defendant, James Green, is the father of the minor child, Arry Jene Manning, and seeks a civil adjudication of paternity and an order of child support for Arry Manning. Plaintiff Helen Manning is receiving Aid to Families with Dependent Children (AFDC) funds from the Wake County Department of Social Services for the support and maintenance of the child and by operation of law Wake County is the assignee of Helen Manning's right to establish paternity and a child support obligation.

At trial Helen Manning testified that she was the mother of Arry Jene Manning who was born a full-term baby on 28 February 1978. She met the defendant in September or October of 1976 and began to have a sexual relationship with him in December of 1976 or January of 1977. During the entire period that the child could have been conceived, they had sexual relations once or twice a week. The trial court sustained defendant's objection but allowed plaintiff to testify for the record that she did not have sexual intercourse with anyone other than the defendant from 15 March 1977 to 15 July 1977. Plaintiff further testified that she had married Henderson Johnson on 13 June 1965, at which time they were both residents of Paterson, New Jersey. They separated in December of 1969 and in January of 1975 Ms. Manning was served with a complaint for divorce, which she never answered. She moved to North Carolina in December of 1975 and has had no contact with her estranged husband since that time. She did not know where he was or how to locate him at the time the child was conceived in the spring of 1977.

Mary Troutman, Wake County Child Support Investigator, testified that she had attempted to locate Mr. Johnson in order to obtain information of his whereabouts during the time when Arry Manning was conceived. She checked all available public records from Wake County and North Carolina, including motor vehicle and voter registration, tax listings, telephone and city directories, and the post office, and found no evidence of his residence in this county or state. She attempted to locate Mr. Johnson in New Jersey through the law firm in Paterson that drafted his divorce

complaint and through official sources such as the post office and the telephone company. She was unable to use the Parent Locator System because she could not determine his social security number. She was unable to locate him through any of the sources available to her. She further testified that defendant Green had admitted to her that he might be Arry Manning's father. The defendant had requested a blood test to determine paternity. The court admitted into evidence the results of an extended factor red cell and HLA blood test, showing a 97.6% statistical likelihood of defendant's paternity of Arry Manning.

Defendant James Green presented no evidence, resting his defense solely on the presumption of legitimacy.

The trial court found that the evidence tendered by plaintiff tending to show nonaccess of her husband was excluded as violative of Lord Mansfield's Rule, and that while all the evidence tended to show there was no access in fact, the plaintiffs did not prove that such access was impossible. The court therefore concluded as a matter of law that although the plaintiffs carried their burden of proof, they did not prove that access between Henderson Johnson and Helen Manning was impossible during the time the child could have been conceived, and consequently, the court was precluded from considering all of the plaintiffs' evidence and finding the defendant to be the natural and biological father of Arry Jene Manning. Plaintiff Wake County appeals.

*Assistant Wake County Attorneys Shelley T. Eason and John C. Cooke for plaintiff appellant.*

*Earle R. Purser and Becky I. Matthews for defendant appellee.*

ARNOLD, Judge.

Plaintiffs contend that the trial court erred in concluding that the presumption of legitimacy required plaintiffs to prove that access between Helen Manning and her estranged husband was impossible at the time the child was conceived.

The presumption of legitimacy is an ancient English common law doctrine which, in its original form, conclusively presumed

that a child born of a married woman was legitimate unless the husband was shown to be impotent or not within the four seas of England. This rule has given way to a less harsh rule which provides that access or nonaccess of the husband is a fact to be established by proper proof. *Ray v. Ray*, 219 N.C. 217, 13 S.E. 2d 224 (1941). In addition to evidence of impotency and nonaccess, evidence of blood grouping tests results and racial differences may be admitted to rebut the presumption. *Wright v. Wright*, 281 N.C. 159, 188 S.E. 2d 317 (1972); 1 Stansbury's N.C. Evidence § 246 (Brandis rev. 1973).

In the case *sub judice* plaintiffs are relying on evidence of nonaccess. Our analysis of the North Carolina cases on point reveals a certain amount of confusion as to the quantum of evidence necessary to render the presumption permissive. Various standards for measuring the sufficiency of rebuttal evidence have been employed by the courts of this state. Many of the cases state the rule as follows: ". . . the presumption can be rebutted only by facts and circumstances which show that the husband could not have been the father, as that he was impotent or *could not* have had access to his wife." (Emphasis added) *Wright v. Wright, supra; Eubanks v. Eubanks*, 273 N.C. 189, 159 S.E. 2d 562 (1968); *State v. McDowell*, 101 N.C. 734, 7 S.E. 785 (1888).

Other North Carolina cases state that nonaccess is sufficiently shown to render the presumption permissive if the evidence shows that the husband could not have been the father because he was impotent or *did not* have access to the mother at the time the child was conceived. *State v. Bowman*, 230 N.C. 203, 52 S.E. 2d 345 (1949); *Ray v. Ray, supra*. These cases have generally involved fact situations where the husband did not live in the same county or state as the wife.

The distinction between these two standards has not been expressly recognized in the case law, and the courts that have cited the stricter "could not have had access" standard actually have not required a showing of impossibility. The fact that the wife is notoriously living in adultery has long been recognized as a "potent circumstance" tending to show nonaccess, even though the husband resided in the same community and had the opportunity of access. *Ray v. Ray, supra; Ewell v. Ewell*, 163 N.C. 233, 79 S.E. 509 (1913). Absence of the husband from the place

where the wife was also has been recognized as proof that the husband is not the father. *State v. Pettaway*, 10 N.C. 623 (1825).

In the most recent North Carolina Supreme Court decision dealing with the presumption of legitimacy, *State v. White*, 300 N.C. 494, 268 S.E. 2d 481 (1980), the child was conceived while defendant and her mother lived together as husband and wife. *White* held that to require a defendant-husband to offer evidence of the physical impossibility of his fatherhood in order to rebut the presumption of paternity places upon him a burden of production so stringent that, in effect, it unconstitutionally shifts the burden of persuasion to him on that issue. The court found that due process precluded requiring the defendant to do more than offer evidence (1) that he could not be the father because, for example, he did not in fact have sexual relations with his wife at a time when conception could have occurred; or (2) that even if defendant could be the father, some other man also could be the father because that other man had sexual relations with the mother at a time when conception could have occurred.

[1] While the same due process considerations may not apply in civil proceedings, we believe that an examination of the presumption and the quantum of evidence necessary to rebut it is necessary in this case. As previously discussed, proving literal impossibility of access never has been required, and any such statement of the rule in terms which mislead judges and jurors should not be adhered to any longer. Considering the available modes of modern transportation, if a plaintiff is required to negate every possibility of access, the presumption, in effect, reverts to being a conclusive one. We do not go so far as to hold that evidence that another man, as well as the husband, had sexual relations with the mother is sufficient by itself to rebut the presumption in a civil action. A plaintiff is not required, however, to show that the husband *could not* have had access, but that he *did not* have access. Where, as in this case, the spouses are living apart, the presumption will be rebutted unless there is a fair and reasonable basis in light of experience and reason to find that they have engaged in sexual relations.

Related to the issue of the quantum of evidence necessary to rebut the presumption of legitimacy is the question of whether

the testimony of plaintiff Helen Manning concerning the exclusivity of her sexual relations with defendant during the period when conception occurred should have been excluded.

The trial court excluded this evidence as violative of the established rule in North Carolina that neither a husband nor a wife can bastardize a child by testifying to the nonaccess of the husband at the time the child was conceived. *Eubanks v. Eubanks, supra; Ray v. Ray, supra; State v. Pettaway, supra.* This rule, which originated in dictum by Lord Mansfield in a 1777 ejectment case, has come under serious attack in recent years. Many state courts have critically examined the rule and the results flowing from its operation and have either repudiated earlier decisions adopting it, or have declined to adopt it. Annot., 49 A.L.R. 3d 212, §§ 2 and 12 (1973); e.g., *Coffman v. Coffman,* 121 Ariz. 522, 591 P. 2d 1010 (1979); *Davis v. Davis,* 521 S.W. 2d 603 (Tex. 1975); *Commonwealth ex rel. Savruk v. Derby,* 235 Pa. S. 560, 344 A. 2d 624 (1975).

[2] A rule that excludes the best evidence of a fact in issue should not be adhered to unless it has been examined and found to be necessary and justified. The testimony of a spouse on the matter of nonaccess is clearly the best evidence of that fact. Because the rule has outlived the policy reasons initially advanced to support it, and finding none of the other justifications commonly offered for excluding this evidence persuasive, we are inclined to abandon it and hold that a husband and wife may testify concerning nonaccess to each other.

Lord Mansfield's rule originated in an era when a child's legal and property rights were dependent upon his status as a legitimate offspring. In recent years, however, the United States Supreme Court has ameliorated much of the stigma and disability that historically has attached to the status of illegitimacy. Thus, allowing the parent to bastardize the child by direct testimony as to nonaccess no longer has the deleterious effect once feared by our courts.

The rule has never prevented proof of nonaccess of the husband during the time conception occurred. The exclusion has applied only to testimony by the spouses themselves. Third parties have been allowed to so testify, *State v. Wade,* 264 N.C. 144, 141 S.E. 2d 34 (1965); and the wife has been allowed to testify as to il-

licit relations in actions directly involving the parentage of the child. *Ray v. Ray, supra.* Furthermore, discarding the rule would be consistent with the modern trend towards discarding or modifying outmoded competency rules.

In several instances the rule has already been undermined. North Carolina has adopted the Uniform Reciprocal Enforcement of Support Act, G.S. 52A-1 *et seq.*, § 18 of which provides: "Laws attaching a privilege against the disclosure of communications between husband and wife are inapplicable to proceedings under this Chapter. Husband and wife are competent witnesses to testify to any relevant matter, including marriage and parentage." This provision appears to have abolished the rule in proceedings pursuant to the Act. A second instance is the implicit rejection of the rule as to criminal nonsupport actions by the North Carolina Supreme Court in *State v. White, supra.* Moreover, the General Assembly has recently taken the progressive step of abrogating the rule in all civil and criminal proceedings in which paternity is at issue. G.S. 8-57.2 (effective 1 October 1981).

[3] We conclude that there is no justification for a rule which excludes the best evidence of access or nonaccess and therefore tends to absolve the rightful father of his duty of support. The unfairness of the rule can easily be seen in the case *sub judice.* The plaintiff testified for the record that she had not seen her husband in five years and that she had had sexual relations only with the defendant during the time period in which conception occurred. Mary Troutman, a child support investigator with the Wake County Department of Social Services, testified that she had investigated in both North Carolina and in the plaintiff's husband's home state of New Jersey and was unable to locate him. There was no evidence that plaintiff's husband had ever been in North Carolina. These facts are clearly sufficient to rebut the presumption of legitimacy and allow a determination of paternity from all the facts and circumstances in the case.

Accordingly, the judgment is vacated and the case remanded for a determination of paternity and child support in accordance with this option.

Vacated and remanded.

Judge VAUGHN concurs.

Judge BECTON concurs in the result.