SHARN M. JEFFRIES, Plaintiff-appellant v. TATJANA THOMAS MOORE and CARL JONATHAN MOORE, JR., Defendants-appellees

No. COA00-1292

(Filed 5 February 2002)

## Child Support, Custody, and Visitation— custody—legitimacy presumption when child born during marriage

The trial court erred in a child custody case by dismissing plaintiff alleged father's case under N.C.G.S. § 1A-1, Rule 12(b)(6) that challenged the presumption of legitimacy which attaches when a child is born during a marriage union, because: (1) plaintiff ex-boyfriend and the child's mother regularly engaged in unprotected sexual intercourse surrounding the time of conception; (2) the trial court could not determine whether the mother and her husband, the presumed father, were continuously separated surrounding the time of conception; (3) plaintiff rebutted the presumption by showing the minor child appears to be of mixed ancestry including African-American ancestry resembling plaintiff alleged father, whereas the mother and her husband are Caucasian; (4) no North Carolina cases have established an absolute prohibition against an alleged parent's ability to challenge the presumption of legitimacy that attaches when a child is born during a marriage union, although one case placed a restriction upon an alleged parent's ability to compel blood testing of a presumed father as a means of challenging the presumption of legitimacy under N.C.G.S. § 8-50.1 as the statute read when the

action originated; and (5) the trial court determined that plaintiff was the biological father.

Judge GREENE concurring in a separate opinion.

Appeal by plaintiff from order entered 1 June 2000 by Judge Alonzo B. Coleman, Jr. in Orange County District Court. Heard in the Court of Appeals 11 September 2001.

*Loftin & Loftin, P.A., by John D. Loftin, for plaintiff-appellant.*

*No brief filed for defendants-appellees Tatjana Thomas Moore and Carl Jonathan Moore, Jr.*

BRYANT, Judge.

Plaintiff Sharn M. Jeffries commenced this appeal seeking review of the trial court's dismissal of his complaint for custody of minor child MiKayla Li Moore—whom plaintiff claims is his natural child.

Defendants Tatjana Thomas Moore and Carl Jonathan Moore, Jr. were married on 18 November 1995 and remained married throughout the course of this litigation. Defendants separated on or around 20 April 1997, and Tatjana began having sexual relations with plaintiff in May 1997. From August 1997 to August 1998, Tatjana spent an average of four nights per week with plaintiff. During the overnight stays, plaintiff and Tatjana engaged in sexual intercourse without the use of contraceptives.

On 25 January 1999, Tatjana gave birth to minor child MiKayla. The conception date was approximated as 21 April 1998—eight months after Tatjana began staying overnight with plaintiff. It could not be ascertained whether Tatjana was continuously separated from her husband surrounding the time of conception.

On 28 May 1999, plaintiff filed a complaint against Tatjana for custody of MiKayla. In addition, on 7 June 1999 plaintiff filed a motion to compel DNA testing to determine parentage. Tatjana filed a motion to dismiss the case pursuant to North Carolina Rules of Civil Procedure 12(b)(6) and 19(a), or in the alternative, change venue to Harnett County. By court order filed 29 July 1999, husband Carl was joined as a necessary party to the action.

The trial court found that Carl claimed to be the natural father of MiKayla. MiKayla was born during the marriage of Tatjana and Carl.

In addition, Carl signed MiKayla's birth certificate, thus acknowledging paternity. Based on the decision announced in *Johnson v. Johnson*, 120 N.C. App. 1, 461 S.E.2d 369 (1995), *rev'd by*, 343 N.C. 114, 468 S.E.2d 59 (1996) (per curiam), the trial court granted the motion to dismiss. Plaintiff gave notice of appeal on 28 June 2000.

On appeal, plaintiff assigns as error the trial court's dismissal of the case pursuant to Rule 12(b)(6).[1] Specifically, plaintiff argues that our State's public policy against illegitimizing children born to a marriage is inapplicable to the facts in this case. This Court finds the dispositive issue to be whether *Johnson* prohibits an alleged parent from challenging the presumption of legitimacy which attaches when a child is born during a marriage union. Based on the following reasons, we reverse the decision of the trial court and remand with instructions.

" 'A complaint may be dismissed pursuant to Rule 12(b)(6) if no law exists to support the claim made, if sufficient facts to make out a good claim are absent, or if facts are disclosed which will necessarily defeat the claim.' " *Shell Island Homeowners Ass'n v. Tomlinson*, 134 N.C. App. 217, 225, 517 S.E.2d 406, 413 (1999) (citation omitted). In *Eubanks v. Eubanks*, 273 N.C. 189, 197, 159 S.E.2d 562, 568 (1968), our Supreme Court stated that when a child is born in wedlock, the law presumes the child to be legitimate, and this presumption can only be rebutted by facts and circumstances that show the presumed father (husband) could not be the natural father.

Examples of facts and circumstances that would show the presumed father could not be the natural father include when the presumed father is impotent or does not have access to the mother. *See Wright v. Wright*, 281 N.C. 159, 171, 188 S.E.2d 317, 325 (1972) ("Impotency and nonaccess are set out therein as *examples* of types of evidence that would 'show that the husband could not have been the father.' "). *But see Wake County v. Green*, 53 N.C. App. 26, 30, 279 S.E.2d 901, 904 (1981) (proving literal impossibility of access of husband to the mother at time of conception is not required to rebut presumption of legitimacy; but where the spouses are living apart, the presumption of legitimacy will be rebutted unless there is a fair and reasonable basis in light of experience and reason to find the husband and mother were engaging in sexual relations).

---

1. As plaintiff has not assigned as error whether his motion for blood group testing should have been granted, this Court will not address that concern on appeal. Based on the record, it appears that the trial court did not rule on the motion but instead granted Tatjana's motion to dismiss.

**JEFFRIES v. MOORE**

[148 N.C. App. 364 (2002)]

Other examples that would show the presumed father could not be the natural father include evidence that the mother is notoriously living in adultery—supporting a claim of nonaccess between husband and mother, *see Ray v. Ray*, 219 N.C. 217, 220, 13 S.E.2d 224, 226 (1941); evidence of perceived racial differences between the mother, presumed father and child, *see Wright*, 281 N.C. at 172, 188 S.E.2d at 325; and evidence based on blood group testing results, *see Wright*, 281 N.C. at 172, 188 S.E.2d at 325-26.

In the case at bar, the trial court found that the plaintiff and mother regularly engaged in unprotected sexual intercourse surrounding the time of conception. The trial court also found that the minor child was born during the marriage of husband and mother, and husband acknowledged paternity of the minor child. It appears from the record that the issue of inaccessibility between the husband and mother was addressed by the trial court. The trial court, however, could not determine whether the mother and husband were continuously separated surrounding the time of conception.

The trial court did find that from August 1997 to August 1998, the mother was spending an average of four nights per week with plaintiff. The trial court also made the finding that the husband and mother "both have very white skin and appear to be Caucasian." "Plaintiff has dark brown skin with very black, extremely curly hair and appears to be of mixed ancestry, including African American ancestry," the trial court found. In addition, the trial court found, "[t]he minor child, Mikala [sic], appears to be [of] a mixed ancestry, including African-American ancestry. Mikala [sic] resembles the Plaintiff and does not resemble Defendant Carl Moore, Jr."

Plaintiff moved for the trial court to order blood group testing as to himself, the mother and minor child pursuant to N.C.G.S. § 8-50.1(b1); and testing of the husband pursuant to Rule 35 of the North Carolina Rules of Civil Procedure. Plaintiff's motion to compel DNA testing was apparently dismissed along with his complaint for custody. The trial court made the finding that plaintiff was the biological father and concluded that it was "in the best interest of the minor child to visit with her biological father, the Plaintiff in this action." However, pursuant to *Johnson v. Johnson*, 120 N.C. App. 1, 461 S.E.2d 369 (1995), *rev'd by*, 343 N.C. 114, 468 S.E.2d 59 (1996) (per curiam), the trial court determined that it was under mandate to dismiss plaintiff's complaint.

In *Johnson*, a husband filed a complaint in July 1992 seeking a divorce from the mother and temporary custody of a minor child born during the marriage. *Johnson*, 120 N.C. App. at 3, 461 S.E.2d at 370. The mother answered and counterclaimed alleging in part that the husband was not the natural father and requested the trial court to order blood group testing as to herself, the husband, and the minor child pursuant to N.C.G.S. § 8-50.1(b). *Id.* She subsequently filed a separate action against her boyfriend alleging the boyfriend was the minor child's natural father and moved that the trial court order blood group testing as to herself, the boyfriend, and the minor child. *Johnson*, 120 N.C. App. at 4, 461 S.E.2d at 370. Shortly thereafter, the boyfriend filed an acknowledgment of paternity alleging he was the natural father of the minor child at issue. *Id.* The trial court consolidated these actions. *Johnson*, 120 N.C. App. at 4, 461 S.E.2d at 371. The boyfriend then filed a crossclaim against the husband for a determination of paternity. *Johnson*, 120 N.C. App. at 5, 461 S.E.2d at 371.

After consolidation, the mother moved the trial court to require the husband to submit to blood group testing to determine parentage. The mother's motion was denied by order entered on 22 October 1992. *Johnson*, 120 N.C. App. at 4, 461 S.E.2d at 371. Although the boyfriend was named as a party to the consolidated action prior to the hearing on the mother's motion, the boyfriend was neither served by either party nor did he attend the hearing on the mother's motion. *Id.*

On 19 November 1992, the boyfriend moved for a new trial and relief from the 22 October 1992 order pursuant to Rules 59 and 60 of the North Carolina Rules of Civil Procedure, respectively. *Id.* The trial court granted the motion for a new trial and relief on 10 November 1993. *Id.* Thereafter, the boyfriend moved for blood and DNA testing pursuant to N.C.G.S. § 8-50.1(b) and Rule 35 of the North Carolina Rules of Civil Procedure. *Johnson*, 120 N.C. App. at 6, 461 S.E.2d at 372. On 19 January 1994, the trial court entered an order compelling all parties, including the husband, to submit to blood group testing pursuant to N.C.G.S. § 8-50.1(b). *Johnson*, 120 N.C. App. at 7, 461 S.E.2d at 373. The husband appealed. *Johnson*, 120 N.C. App. at 8, 461 S.E.2d at 373.

On appeal, the husband argued *inter alia* that the boyfriend did not have standing to rebut the marital presumption pursuant to N.C.G.S. § 8-50.1(b). *Johnson*, 120 N.C. App. at 8, 461 S.E.2d at 373. The majority on appeal disagreed.

N.C.G.S. § 8-50.1(b)[2] as construed by the *Johnson* Court read:

> (b) In the trial of any civil action in which the question of parent-age arises, the court before whom the matter may be brought, upon motion of the plaintiff, alleged-parent defendant, or other interested party, shall order that the alleged-parent defendant, the known natural parent, and the child submit to any blood tests and comparisons which have been developed and adapted for pur-poses of establishing or disproving parentage.

*Johnson*, 120 N.C. App. at 9, 461 S.E.2d at 374. The majority reasoned that the boyfriend was an interested party as that term was used in N.C.G.S. § 8-50.1(b), and therefore had standing to move for blood group testing. *Id.* A dissent was filed questioning whether the boyfriend had standing to compel the husband to submit to blood group testing pursuant to N.C.G.S. § 8-50.1(b).

On appeal from the decision of the Court of Appeals, the Supreme Court of North Carolina stated the genuine issue as:

> Does the language of N.C.[G.S.] § 8-50.1 in effect when this action originated confer standing upon an alleged natural parent such as Mr. Meehan [the boyfriend] to compel a presumed father such as Mr. Johnson [the husband] to submit to a blood test to determine the paternity of a child born during the marriage of the presumed father to the natural mother?

*Johnson v. Johnson*, 343 N.C. 114, 114-15, 468 S.E.2d 59, 60 (1996). The Supreme Court reversed and stated that "the question should be answered in the negative." *Johnson*, 343 N.C. at 115, 468 S.E.2d at 60.

In reviewing the case at bar, this Court finds that the holding in *Johnson*, as articulated by our Supreme Court, is not dispositive of whether an alleged parent is prohibited from challenging the pre-sumption of legitimacy which attaches when a child is born during a

---

2. N.C.G.S. § 8-50.1(b) was repealed by session laws 1993, c. 333 § 2 effective 1 August 1994. The dissent cited to a 1986 version of the statute. *See Johnson*, 120 N.C. App. at 18, 461 S.E.2d at 379. The majority did not specify what version of the statute it was construing.

The version of N.C.G.S. § 8-50.1(b1) applicable to the case *sub judice* reads, "In the trial of any civil action in which the question of parentage arises, the court shall, on motion of a party, order the mother, the child, and the alleged father-defendant to submit to one or more blood or genetic marker tests, to be performed by a duly certified physician . . . ." N.C.G.S. § 8-50.1(b1) (1999).

marriage union. The *Johnson* Court enunciated a very narrow holding: the language of N.C.G.S. § 8-50.1, in effect when that action originated, did not confer standing upon an alleged parent to compel a presumed father (husband) to submit to a blood test to determine the parentage of a child born during the marriage of the husband and mother. Neither *Johnson* nor any other North Carolina cases that we have reviewed, have established an absolute prohibition against an alleged parent's ability to challenge the presumption of legitimacy that attaches when a child is born during a marriage union. The decision in *Johnson* merely placed a restriction upon an alleged parent's ability to compel blood testing of a presumed father as a means to challenge the presumption of legitimacy pursuant to N.C.G.S. § 8-50.1—as the statute read when the action originated.

In the case *sub judice,* the presumption of legitimacy is challenged by other facts and circumstances. Here, the trial court made findings of perceived racial differences between the mother, father and child. *See Wright,* 281 N.C. at 172, 188 S.E.2d at 325. The trial court found that plaintiff and mother engaged in sexual intercourse about and around the time of conception. The trial court, however, could not determine whether the husband and mother were continuously separated about and surrounding the time of conception. Moreover, the trial court found plaintiff to be the biological parent of the minor child at issue. Based on these findings the trial court concluded that although it was "in the best interest of the minor child to visit with her biological father, the Plaintiff in this action," the *Johnson* decision mandated the dismissal of this action.

As we previously stated, the holding in *Johnson* as articulated by our Supreme Court was very narrow. We therefore reverse the decision of the trial court dismissing this action based on the holding announced by our Supreme Court in the *Johnson* case. In addition, we find that the trial court has already determined that plaintiff has rebutted the presumption of legitimacy, and indeed has found and concluded that plaintiff is the biological father of the minor child. The trial court determined that it would be "in the best interest of the minor child to visit with her biological father, the Plaintiff in this action." Therefore, we remand this case with instructions for the trial court to resolve a visitation schedule for the parties involved.

Reversed and remanded.

Judge CAMPBELL concurs.

**JEFFRIES v. MOORE**

[148 N.C. App. 364 (2002)]

Judge GREENE concurs in a separate opinion.

GREENE, Judge, concurring.

I agree with the majority that *Johnson v. Johnson*, 343 N.C. 114, 468 S.E.2d 59 (1996) (per curiam) does not hold a putative father is precluded from "challenging the presumption of legitimacy which attaches when a child is born during a marriage union," but write separately to address the statutory basis for allowing the putative father to challenge this presumption. Our statutes specifically provide that "[t]he putative father of a child born to a mother who is married to another man may file a special proceeding to legitimate the child," N.C.G.S. § 49-12.1(a) (1999), and the marital "presumption of legitimacy can be overcome by clear and convincing evidence," N.C.G.S. § 49-12.1(b) (1999). Furthermore, actions to establish paternity may be brought by "[t]he mother, the father, the child, or the personal representative of the mother or the child." N.C.G.S. § 49-16(1) (1999). Thus, our statutes authorize actions by putative fathers where a child is born during wedlock to a mother married to another man.

*Johnson* addressed only the right of a party to compel a person to submit to a blood test and it held the putative father of a child has no standing to compel the husband of the mother of the child born during wedlock to submit to a blood test. *Johnson*, 343 N.C. at 115, 468 S.E.2d at 60. The statute relied on by *Johnson*, N.C. Gen. Stat. § 8-50.1(b), has been repealed by our legislature and replaced by N.C. Gen. Stat. § 8-50.1(b1). This new statute grants standing to any "party" in a civil action to establish parentage to compel "the mother, the child, and the alleged father-defendant" to submit to "one or more blood or genetic marker tests." N.C.G.S. § 8-50.1(b1) (1999). Section 8-50.1(b1) does not appear to authorize an order compelling the husband of a mother of a child born during wedlock to submit to a blood or genetic marker test, unless he is a defendant in a parentage case who is alleged to be the father of the child.[3]

Thus, in this case, the trial court erred in holding *Johnson* precluded plaintiff from bringing his action to establish paternity and

---

3. If there is no authority to order a husband to submit to a blood or genetic marker test under section 8-50.1(b1), there appears to be authority under Rule 35 of the North Carolina Rules of Civil Procedure. N.C.G.S. § 1A-1, Rule 35(a) (1999) (when the "blood group" of "a party" is in controversy, a trial court "may order the party to submit" to the test). Rule 35 applies without regard to whether the husband is alleged to be the father of the child, as long as he is a party to the parentage action. *See id.*

seek custody of the minor child. Accordingly, I agree with the majority that the order of the trial court must be reversed and this case remanded to the trial court to resolve a visitation schedule for the parties involved.