HAROLD GENE EUBANKS, PLAINTIFF, v. BRENDA WALKER EUBANKS AND BONNIE C. WALKER, GUARDIAN AD LITEM OF BRENDA WALKER EUBANKS, DEFENDANTS.

(Filed 6 March, 1968.)

**1. Divorce and Alimony §§ 2, 13—**

A defendant wife may plead the invalidity of a separation agreement by rebutter in her husband's suit for divorce where the husband, in reply to the wife's cross-action for alimony without divorce, sets up a deed of separation as a bar to the cross-action.

**2. Divorce and Alimony § 13—**

A defendant wife in an action for divorce may not attack the legality of the separation until the deed of separation entered into between the parties has been rescinded.

**3. Same; Husband and Wife § 4—**

A married woman may attack the certificate of her acknowledgment and privy examination respecting her execution of a deed of separation upon the ground of mental incapacity, infancy, or fraud of the grantee.

**4. Infants § 2; Husband and Wife § 4—**

In the absence of a statute to the contrary, the contract of an infant with his spouse is voidable at his election within a reasonable time after he comes of age.

**5. Divorce and Alimony § 13; Husband and Wife § 11—**

A 17-year-old wife may attack the validity of a separation agreement on the ground of her infancy and thereby disaffirm the agreement insofar as it releases the plaintiff husband from the obligation to support her, and the statute, G.S. 52-13 [now G.S. 52-10], relates only to the release of an interest in property and has no bearing whatever on the right of a wife to support.

**6. Divorce and Alimony § 10—**

In the husband's action for divorce, evidence that the defendant wife was mentally disturbed, that her husband knew of her condition and had made an appointment for her with a psychiatrist, but that he took her to the office of his attorney where she was induced for $100, and without representation by her own attorney, to sign a deed of separation releasing the husband from all obligations to support her and waiving all her interest in his property, *is held* sufficient to be submitted to the jury on the issue of the wife's lack of mental capacity to execute the agreement.

**7. Husband and Wife § 1—.**

The relationship between husband and wife is the most confidential of all relationships and transactions between them, to be valid, must be fair and reasonable.

**8. Husband and Wife § 10—**

To be valid, a separation agreement must be untainted by fraud and must have been entered into without coercion or the exercise of undue influence and with full knowledge of all the circumstances, conditions and rights of the contracting parties.

**9. Divorce and Alimony § 13—**

The husband's action under G.S. 50-6 for absolute divorce on the ground of one year's separation may be defeated by the wife's allegations and proof of abandonment.

**10. Descent and Distribution § 4—**

In the absence of evidence to the contrary, the term of pregnancy is presumed to be ten lunar months or 280 days.

**11. Parent and Child § 1—**

The law presumes the legitimacy of a child born in wedlock, but such presumption may be rebutted by proof of the husband's impotency or his nonaccess to the wife, or, if the husband had the opportunity of access, then by proof of the wife's living in open adultery.

**12. Appeal and Error § 49—**

The exclusion of evidence cannot be held prejudicial when the record fails to show what the witness would have testified had he been permitted to answer.

**13. Divorce and Alimony § 13— Jury findings that plaintiff lived apart from wife more than one year but was father of her child conceived after date of separation warrant new trial.**

In the husband's action for absolute divorce on the ground of one year's separation, the defendant wife set up a cross-action alleging, *inter alia*, that plaintiff had abandoned her and their child. By reply plaintiff denied defendant's allegations of abandonment and paternity. On the evidence in the case, the presumption arose that the child was conceived after plaintiff had separated from defendant. There was no evidence that defendant had lived in adultery after the separation but there was evidence that plaintiff had an opportunity of access to the wife. The jury found on the trial court's peremptory instruction that plaintiff had lived apart from

defendant for more than one year, but also found that plaintiff was the father of the child. *Held:* The trial court should have instructed the jury that if they answered the issue of separation in the affirmative, the issue of plaintiff's paternity should then be answered in the negative, and its failure to do so was error.

LAKE and HUSKINS, JJ., took no part in the consideration or decision of this case.

APPEAL by plaintiff and defendant from *Morris, E.J.*, March 1967 Assigned Civil Session of WAKE, docketed and argued at the Fall Term 1967 as Case No. 543.

Plaintiff husband instituted this action on 21 March 1966 for an absolute divorce on the ground of separation for one year. Upon his motion, a guardian *ad litem* was appointed for defendant wife, a minor, on 19 August 1966. The answer, filed on 30 January 1967, denied the separation alleged by plaintiff and set up a cross action for alimony without divorce. In brief summary, defendant alleged:

In March 1965, plaintiff abandoned defendant without cause when he took her to her mother's home to stay "until her nerves got straightened out." He continued, however, to have sexual relations with her until sometime in April. During this period she became pregnant with plaintiff's child, Rhonda Kay Eubanks, who was born 7 January 1966. Plaintiff, an able-bodied man, has never supported this child, and he has contributed nothing to defendant's support since about 7 March 1965. Defendant's prayer for relief was that she be granted alimony without divorce and the custody of the child, and that plaintiff be required to support the child.

By reply, plaintiff denied that he was the father of Rhonda as well as all other material allegations in the answer. He also averred that, on 10 March 1965, he and defendant had entered into a duly executed separation agreement.

To the reply defendant filed a rebutter in which she alleged that on the day she signed the deed of separation she was only 17 years old and that her IQ of 61 put her "in the mild to moderately retarded range"; that plaintiff got her from her mother's home upon the pretext of taking her to the doctor; that he took her to the courthouse, where he coerced her into signing a deed of separation, which was grossly unfair to her; that thereafter plaintiff and defendant had sexual relations, which invalidated the deed of separation. She prayed that the deed of separation be declared null and void.

Upon the trial, plaintiff offered evidence which tended to show: Plaintiff was then 24 years of age. He married defendant on 27 April 1963, when she was 16 years old. Defendant found it "kind of

hard to get adjusted to married life. . . . [H]er tension span was real short." Plaintiff is a truck driver for Thurston Motor Lines, earning $100-$125 a week. His trips begin in Raleigh and last from 10-48 hours; ninety percent of his driving is done at night. On 6 March 1965, plaintiff and defendant separated and have had no marital relationship since. He continued to live in Apex, and she lived with her mother in Cary. On 11 March 1965, after telephoning an attorney and requesting him to prepare a deed of separation, plaintiff took defendant from the home of her mother, Mrs. Walker, without disclosing he was taking her daughter to an attorney's office. He told Mrs. Walker he was taking his wife to see a doctor. After seeing the doctor, they went to the office of the attorney. There, defendant signed the deed of separation by which — for a consideration of $100.00 in cash — she released plaintiff from all further obligation to support her, gave him possession of all their household belongings, and quitclaimed all her right, title, and interest in the home and in any other property he then owned or might thereafter acquire. Plaintiff did not tell defendant she needed a lawyer to represent her, nor did he offer to employ one for her. After they signed the deed of separation, the attorney accompanied them to the courthouse. Defendant acknowledged the deed of separation before the Clerk of the Superior Court, and the instrument was recorded. Plaintiff then returned defendant to the home of her mother, where he remained about ten minutes, but he did not tell Mrs. Walker what they had done. Since that day, he has not spoken to defendant except on the telephone and has contributed nothing to her support. He has never contributed to the support of the child Rhonda.

Defendant's evidence tended to establish these facts: After plaintiff and defendant were married, they lived in a trailer in Apex. Defendant was afraid to stay there alone when plaintiff was away at night. His unwillingness to allow her to stay with her mother in Cary during his absences was the cause of most of their disputes. Later, they purchased and moved into a new house in Apex. Defendant cooked for plaintiff, kept the house clean, and washed and ironed his clothes. On 2 June 1964, she had a miscarriage; after that plaintiff began to accuse her of infidelity. On one occasion, he struck defendant. He said she could not cook right. On 6 March 1965, plaintiff took her to her mother's home and asked Mrs. Walker to keep her for a month because her "nerves were real bad," and he had to go to work in Charlotte. Mrs. Walker agreed to do this. At that time, defendant was not herself. She was nervous and upset; she cried a lot and had to be told what to do and what not to do. Her father was then a patient in the State Hospital. On March 8th and 15th, 1965,

plaintiff took defendant to a doctor, and he told Mrs. Walker that he had made an appointment with a psychiatrist to see defendant on March 22nd. When defendant told her mother about the separation, Mrs. Walker called plaintiff, who told her that he had defendant "sign some papers about the house." At that time defendant was 17 years old. The day after plaintiff took defendant to the courthouse, they went back to the home in which they had lived, went in, and "talked about separating and all." After that, plaintiff came to see her at her mother's home, but she did not go off with him. Defendant gave birth to the child Rhonda on 7 January 1966.

At the conclusion of all the evidence, plaintiff's motion that defendant's cross action be dismissed was allowed, and defendant excepted. The court submitted, and the jury answered, issues as follows:

"1. Has the plaintiff been a resident of the State of North Carolina for more than six months next preceding the institution of the action? ANSWER: Yes.

"2. Were the plaintiff and defendant married as alleged in the complaint? ANSWER: Yes.

"3. Have the plaintiff and defendant lived separate and apart from each other continuously for more than one year next preceding the institution of this action, as alleged in the complaint? ANSWER: Yes.

"4. Is the plaintiff the father of the minor child, Rhonda K. Eubanks, as alleged in the Further Answer and Counterclaim of the defendant? ANSWER: Yes.

"5. Has the plaintiff willfully failed and neglected to provide adequate support for said child as alleged in the Further Answer and Counterclaim of the defendant? ANSWER: Yes."

The court entered judgment granting plaintiff an absolute divorce from defendant, awarding defendant the custody of the child Rhonda, and ordering plaintiff to pay to defendant $20.00 a week for the child's support.

Both plaintiff and defendant excepted to the judgment and appealed.

*Boyce, Lake & Burns for plaintiff appellant-appellee.*

*Dupree, Weaver, Horton, Cockman & Alvis for defendant appellant-appellee.*

SHARP, J.   Plaintiff appeals from the adjudication that he is the father of defendant's child, Rhonda. Defendant appeals from the judgment dismissing her cross action and from the decree awarding plaintiff an absolute divorce.

Plaintiff's complaint alleges a cause of action for divorce on the ground of one year's separation. G.S. 50-6. Defendant's answer denies the separation as alleged and sets up a cross action for alimony without divorce upon allegations that plaintiff had abandoned her and their child, born after plaintiff had separated himself from defendant. G.S. 50-16. By reply plaintiff denies defendant's allegations of abandonment and paternity and, in bar of alimony, pleads that the agreement of 10 March 1965 had legalized their separation from that date and released him from any further obligation to defendant. By rebutter, defendant pleads the invalidity of the separation agreement. This method of pleading was approved in Lawson v. Bennett, 240 N.C. 52, 81 S.E. 2d 162.

In addition to her allegation that the deed of separation had been rescinded by subsequent sexual relations, Jones v. Lewis, 243 N.C. 259, 90 S.E. 2d 547, defendant alleges that it was invalid because (a) at the time she executed it she was an infant, 17 years of age; (b) she lacked sufficient mental capacity to execute the instrument; and (c) the agreement was fraudulently obtained and grossly unfair to her.

Until the deed of separation is rescinded, defendant cannot attack the legality of the separation or obtain alimony from plaintiff. O'Brien v. O'Brien, 266 N.C. 502, 146 S.E. 2d 500; Edmisten v. Edmisten, 265 N.C. 488, 144 S.E. 2d 404; Fuchs v. Fuchs, 260 N.C. 635, 133 S.E. 2d 487. A married woman may attack the certificate of her acknowledgment and privy examination respecting her execution of a deed of separation, inter alia, upon the grounds of her mental incapacity, infancy, or the fraud of the grantee. Lee v. Rhodes, 230 N.C. 190, 52 S.E. 2d 674. See Van Every v. Van Every, 265 N.C. 506, 144 S.E. 2d 603; Joyner v. Joyner, 264 N.C. 27, 140 S.E. 2d 714; Lawson v. Bennett, supra.

Defendant's evidence tended to show that at the time she signed the deed of separation, she was an infant 17 years of age. Absent an enabling statute which provides a different rule, an infant's contract with his or her spouse is subject to the general principle that the deeds and contracts of an infant (except for a narrowly limited class of contracts not applicable here) are voidable at his election within a reasonable time after he comes of age. 27 Am. Jur. Infants § 16; 3 Lee, N. C. Family Law § 270 (1963); Fisher v. Motor Co., 249

N.C. 617, 107 S.E. 2d 94; *Jackson. v. Beard,* 162 N.C. 105, 78 S.E. 6.

Since 3 June 1965, G.S. 52-10.1 has empowered any married couple, both of whom are 18 years of age or over, to execute a binding separation agreement upon compliance with its terms. In no event could this statute have any application to the agreement in suit, which was acknowledged 11 March 1965. At that time, the applicable statute, G.S. 52-13 (now G.S. 52-10), provided that "any persons of full age about to be married, and, subject to § 52-12 (now 52-6), any married person, may release and quitclaim such rights which they might respectively acquire or may have acquired by marriage in the property of each other. . . ." However, it was held in *Motley v. Motley,* 255 N.C. 190, 120 S.E. 2d 422, "that the foregoing statute (G.S. 52-13) relates to the release of an interest in property, *but has no bearing whatever on the right of a wife to support."* *Id.* at 193, 120 S.E. 2d at 424. (Emphasis added.)

In defendant's rebutter, she has pled her infancy and prayed that the deed of separation be declared null and void. Even if G.S. 52-13 be construed as empowering all married minors to release their rights in the *property* of their spouses, it did not authorize the minor wife to release her right to support, and her prayer that the deed of separation be declared null and void was a sufficient disaffirmance of the agreement insofar as it purported to release plaintiff from this obligation. *Millsaps v. Estes,* 137 N.C. 535, 542, 50 S.E. 227, 229.

With reference to her pleas that she lacked sufficient mental capacity to execute the agreement, and that it was unfair and fraudulent as to her, defendant's evidence, taken in the light most favorable to her, was sufficient to establish these facts: She was mentally disturbed, and plaintiff, who had made an appointment with a psychiatrist to see defendant on 22 March 1965, well knew her condition. Notwithstanding, on 11 March 1965, he took her to the office of his attorney where, for $100.00 in cash, she was induced to sign a deed of separation releasing plaintiff from all obligation to support her and waiving all her interest in his property. Defendant had no attorney to advise her.

From the foregoing facts, the jury could find that at the time defendant signed the separation agreement she lacked the mental capacity to understand the nature of the act in which she was engaged, its scope and consequences; that the agreement was grossly unfair to her; and that she had been overreached. *Goins v. McLoud,* 231 N.C. 655, 58 S.E. 2d 634.

The relationship between husband and wife is the most confidential of all relationships, and transactions between them, to be valid,

must be fair and reasonable. *Fulp v. Fulp,* 264 N.C. 20, 140 S.E. 2d 708. Under the circumstances disclosed by this record, an inference of fraud arises from plaintiff's dealings with his minor, mentally disturbed wife. To be valid, "a separation agreement must be untainted by fraud, must be in all respects fair, reasonable and just, and must have been entered into without coercion or the exercise of undue influence, and with full knowledge of all the circumstances, conditions, and rights of the contracting parties." *Taylor v. Taylor,* 197 N.C. 197, 201, 148 S.E. 171, 173.

Defendant's evidence was also plenary to support a finding by the jury that plaintiff, without just cause, abandoned defendant on 6 March 1965, as alleged. *Richardson v. Richardson,* 268 N.C. 538, 151 S.E. 2d 12. Where the husband sues the wife under G.S. 50-6 for an absolute divorce on the ground of one year's separation, she may defeat his action by alleging and proving that the separation was caused by his abandonment of her. *O'Brien v. O'Brien, supra; Taylor v. Taylor,* 257 N.C. 130, 125 S.E. 2d 373. Had the issue of abandonment been submitted to the jury — as it should have been — when the issues in the divorce action were submitted, an affirmative answer to it would have precluded plaintiff's divorce. Plaintiff's action for divorce, the issue of the paternity of the child Rhonda, and defendant's cross action for alimony cannot be separated. These issues, which determine the rights of the parties, are so interrelated that they must be decided in one action.

The court erred in dismissing defendant's cross action. This error made any further proceedings in plaintiff's action for divorce likewise erroneous. Defendant's assignments of error must be sustained.

Plaintiff's appeal and assignments of error bear upon the fourth issue, the jury's answer to which established that he was the father of the child Rhonda, born 7 January 1966. If the fourth issue be answered YES, the fifth must also be answered in the affirmative, since plaintiff admits he has never supported the child and denies his responsibility.

The usually accepted average period of pregnancy is 280 days. 2 Taylor, Principles and Practice of Medical Jurisprudence 24 (12th Ed. 1965). "[I]n the absence of evidence to the contrary, the term of pregnancy is presumed to be ten lunar months or 280 days. . . . Whether, according to the laws of nature, the term of pregnancy may extend 322 days or more from the moment of conception, is a proper subject of testimony by qualified medical experts." *Byerly v. Tolbert,* 250 N.C. 27, 34-35, 108 S.E. 2d 29, 35. Protracted pregnancies of more than 280 days, while uncommon, are not considered

extraordinary. Schatkin, Disputed Paternity Proceedings 519-538 (3d Ed. 1953); 3 Lee, N. C. Family Law § 250 (3d Ed. 1963).

When a child is born in wedlock, the law presumes it to be legitimate, and this presumption can be rebutted only by facts and circumstances which show that the husband could not have been the father, as that he was impotent or could not have had access to his wife. *State v. McDowell,* 101 N.C. 734, 736, 7 S.E. 785, 786, quoted with approval in *State v. Rogers,* 260 N.C. 406, 408, 133 S.E. 2d 1, 2; *accord, State v. Tedder,* 258 N.C. 64, 127 S.E. 2d 786; *State v. Green,* 210 N.C. 162, 185 S.E. 670. To render the child of a married woman illegitimate, unless impotency be established, proof of the nonaccess of her husband is required, and neither the wife nor the husband is a competent witness to prove such nonaccess. *Ray v. Ray,* 219 N.C. 217, 13 S.E. 2d 224. "The evidence of nonaccess, if there be such, must come from third persons." *State v. Wade,* 264 N.C. 144, 145, 141 S.E. 2d 34, 35. If there was access, there is a conclusive presumption that the child was lawfully begotten in wedlock. *Ray v. Ray, supra; Ewell v. Ewell,* 163 N.C. 233, 79 S.E. 509; *Rhyne v. Hoffman,* 59 N.C. 335. However, even though the husband, residing in the same community, had the opportunity of access, "[t]hat the wife is notoriously living in open adultery is a potent circumstance tending to show nonaccess," for it is unreasonable to suppose that, under those circumstances, he would avail himself of such opportunity. *Ray v. Ray, supra* at 220, 13 S.E. 2d at 226.

This record is devoid of any evidence that defendant has committed any act of adultery. At the conclusion of defendant's evidence, however, counsel for plaintiff informed the court that he "would like to offer some additional evidence on the question of paternity." The court declined to permit plaintiff to offer such evidence, and plaintiff assigns this ruling as error. The record does not disclose the identity of the proposed witnesses or what their testimony would have been. It cannot be determined, therefore, whether either the witness or his testimony would have been competent. "Failure to show what the witness would have answered renders the ruling nonprejudicial." *Westmoreland v. R. R.,* 253 N.C. 197, 198, 116 S.E. 2d 350, 351. Notwithstanding, for the reasons hereinafter indicated, the jury's answer to the fourth issue must be set aside.

To entitle plaintiff to an absolute divorce, he was required to prove that he and defendant had lived continuously separate and apart for at least one year next preceding the institution of this action on 21 March 1966. On this record, the law presumes that plaintiff is the father of Rhonda and that she was conceived on or about 3 April 1965, a time within the year next preceding the institution of

the action. Yet the court peremptorily instructed the jury that if they found the facts to be as all the evidence tended to show, they would answer the third issue YES. As plaintiff correctly points out, "We have the anomalous situation of a jury determination that the parties have lived continuously separate and apart from each other during the period of gestation but that one of the parties is the father of the child of the other party." On this record, the third and fourth issues may not each be answered YES, and the court should have instructed the jury that if they answered the third issue YES, they would answer the fourth issue No.

Fundamental error pervaded the trial of this case. Since the judgments dismissing defendant's cross action and awarding plaintiff an absolute divorce must be set aside, justice requires that the adjudication of paternity likewise be vacated and that a trial *de novo* be had on *all* issues raised by the pleadings. Defendant's pleadings are minimal. If so advised, she may move for permission to re-plead.

The decision is this: On defendant's appeal, the judgment dismissing the cross action is reversed; the decree of absolute divorce is vacated and a new trial ordered. On plaintiff's appeal, the adjudication of paternity is set aside and a new trial ordered.

Plaintiff's appeal,

New trial.

Defendant's appeal,

Reversed and remanded.

LAKE, J., and HUSKINS, J., took no part in the consideration or decision of this case.