BRENDA WILLIAMS BRISSON AND R. FRANKLIN WILLIAMS v. ANNIE HILL WILLIAMS

No. 8616SC36

(Filed 15 July 1986)

**1. Trusts § 14.2— constructive trust—breach of confidential relationship of husband and wife**

Plaintiffs' forecast of evidence presented a genuine issue of material fact as to whether defendant committed constructive fraud based on breach of a confidential relationship of husband and wife entitling plaintiffs to the impression of a constructive trust on property conveyed by plaintiffs' father to himself and defendant, his wife, as tenants by the entirety on 1 November 1960 where plaintiffs presented evidence tending to show that at the time of the conveyance plaintiffs' father and defendant entered a contract providing that, should the father predecease defendant, defendant would hold the lands in fee simple but that any of the lands remaining at defendant's death would be divided equally among plaintiffs and defendant's son; the father died in 1966; the father had indicated to plaintiffs and others that he had fixed it so that plaintiffs would inherit the subject property after his death; plaintiffs' father was a chronic alcoholic who was rarely sober between 1957 and his death in 1966 and lacked the capacity to manage his business affairs from about 1960 onward; defendant, instead of plaintiffs' father, managed all of the family's affairs; and defendant was mean to plaintiffs' father, was actually violent with him at times, and apparently wanted everything that he had.

**2. Trusts § 13— undue influence—resulting trust unavailable**

A resulting trust was unavailable to plaintiffs where their evidence tended to show undue influence by defendant.

**3. Trusts § 15— constructive trusts—statute of limitations**

Constructive trusts are governed by the ten-year statute of limitations in N.C.G.S. § 1-56.

**4. Trusts § 15— constructive trust—beginning of statute of limitations—issue of material fact**

A genuine issue of material fact was presented as to when plaintiffs had noticed that defendant was claiming the subject property adversely to them so as to commence the running of the statute of limitations against their claim for impression of a constructive trust on the property where defendant contended that the statute began running when she took possession of the lands in 1966 following the death of plaintiffs' father, and where plaintiffs contended that they believed defendant held only a life estate in the property with plaintiffs retaining a remainder interest that would vest upon defendant's death, that defendant's open, continuous and exclusive possession of the land after the death of plaintiffs' father would not have appeared adverse to plaintiffs, and that the statute of limitations was tolled until they learned in January 1984 that defendant intended to sell the property.

APPEAL by plaintiffs from *McLelland, Judge.* Order entered 15 April 1985 in Superior Court, ROBESON County. Heard in the Court of Appeals 3 June 1986.

Defendant married Rembert Williams on or about 23 December 1956. On 1 November 1960 Williams executed a warranty deed to himself and defendant conveying four tracts of real estate in Robeson County which Williams had theretofore owned individually. The deed recited that: "The purpose and intent of this conveyance is to create a tenancy by the entireties in and to the said Rembert Williams and wife, Annie Hill Williams." The deed was recorded on 1 November 1960.

Defendant and Williams also entered a contract on 1 November 1960 which provided in pertinent part:

That whereas by deed made and executed this date, the said Rembert Williams has conveyed four tracts of land . . . to himself and his said wife, Annie Hill Williams, as tenants by the entireties; and whereas, each of the parties hereto have children by former marriages; and whereas, the parties hereto desire that all of said children share in said lands after the deaths of both of said parties hereto;

NOW, THEREFORE, said parties, for and in consideration of the conveyance hereinabove referred to and other good and valuable considerations moving between said parties, do hereby contract and agree as follows:

1. That in the event the said Rembert Williams predeceases his said wife, Annie Hill Williams, that the said Annie Hill Williams will hold said lands in fee simple and be free to convey, mortgage or encumber same as she sees fit, but any of said lands remaining at the time of her death shall be divided equally between [defendant's son and Williams' son and daughter]. And, in the event the said Annie Hill Williams predeceases the said Rembert Williams, then and in that event, the said Rembert Williams shall own said lands in fee simple with complete right to convey, mortgage or encumber said lands, but all lands remaining at the death of the said Rembert Williams shall be divided equally between [defendant's son and Williams' son and daughter].

Williams died in January 1966. The contract was thereafter recorded on 31 January 1966 in the Robeson County Register of Deeds Office. Defendant has remained in open, continuous and exclusive possession and control of the subject property since Williams' death.

Plaintiffs are the children of Williams by a former marriage, and they are citizens and residents of South Carolina. Plaintiff Brisson learned that defendant intended to sell the subject property in January 1984 when she attended a wedding in Robeson County and saw an auction sign posted on the land. Plaintiffs brought this action on 17 February 1984 seeking, *inter alia,* a declaration that they are "owners of an interest in the real estate described in said deed by reason and establishment of . . ." either a constructive or resulting trust. Defendant raised the statute of limitations as a defense in its answer.

The court granted defendant's motion for summary judgment. Plaintiffs appeal.

*Lee and Lee, by W. Osborne Lee, Jr. and J. Stanley Carmical, for plaintiff appellants.*

*Floyd & Floyd, P.A., by R. F. Floyd, Jr., for defendant appellee.*

WHICHARD, Judge.

The sole question is whether the court erred in granting defendant's motion for summary judgment. Under N.C. Gen. Stat. 1A-1, Rule 56, defendant is entitled to summary judgment if the record shows "that there is no genuine issue as to any material fact and that [defendant] is entitled to a judgment as a matter of law." "In ruling on a motion for summary judgment the evidence is viewed in the light most favorable to the non-moving party." *Hinson v. Hinson*, 80 N.C. App. 561, 343 S.E. 2d 266 (1986).

Plaintiffs contend that they have forecast evidence sufficient to establish either a constructive or a resulting trust. Defendant contends that the statute of limitations bars plaintiffs' claim. We hold that the forecast of evidence presents the following genuine issues of material fact: (1) whether defendant has committed constructive fraud entitling plaintiffs to impression of a constructive trust; and (2) if so, when did plaintiffs have notice that defendant

was claiming the subject property adversely to them so as to commence the running of the statute of limitations. Accordingly, we reverse.

Plaintiffs' complaint alleged, in pertinent part, that: Williams experienced severe chronic alcoholism prior to and during his marriage to defendant and his alcoholism compelled hospitalization and medical treatment on several occasions. By virtue of this alcoholism Williams lacked the requisite mental capacity on 1 November 1960 to have validly executed the deed and contract regarding the subject property. Defendant fraudulently induced Williams to execute these instruments by fraudulently representing to him "that he was signing documents other than documents affecting the real estate owned by [him] or some other, similar fraudulent representation." Defendant, by this fraud or constructive fraud, abused the relationship of trust and confidence between herself and Williams. On numerous occasions after 1 November 1960 Williams informed plaintiffs and others that he "had ensured that, after his death, [plaintiffs] would have an interest in the real property that [he] owned and [plaintiffs] would thus be provided for." Defendant wrongfully interfered with Williams' intent to provide plaintiffs with an interest in the subject property by compelling him to sign the deed and contract on 1 November 1960.

Plaintiffs filed several affidavits in support of these allegations. Plaintiff Brisson states in her affidavit that her father "had always told [her] after his remarriage that he had left his land to [her] brother and [herself] . . ." and that she "had expected to get some land when [defendant] dies . . . ."

Viva Ashley, who was employed by Southern National Bank in Fairmont, North Carolina in 1963, states that Williams entered her bank sometime in 1963 and told her "'that I am going to fix the land so Brenda and Franklin will have it when I am gone.'" Williams returned to the bank on the same afternoon he made the foregoing statement and said "'I have fixed it so Brenda and Franklin will have the land together.'"

Williams' brother, Crofton, states that Williams had a drinking problem which required treatment as early as 1952. After 1957 Williams was rarely sober and usually was drunk by lunch; his drinking worsened during the years prior to his death.

Williams lacked the capacity to manage his business affairs from about 1960 until his death. Defendant handled all the family business. On one occasion Williams told Crofton that "he had looked after making sure that Brenda and Frank got the land after he died."

Lucy Godfrey states that Williams, her half-brother, was easy to persuade. She further states that Williams and defendant had a very violent relationship. On one occasion she heard defendant say " 'I tried to knock him down when he came in the other night . . .[,]' " and on another occasion she heard her say " 'I tried to bust him open the other night.' "

R. C. Faulk states that Williams was one of his best friends since their school days. Williams told him that defendant would always threaten him unless he would do what she said to do and that he was forced to do whatever defendant wanted.

Earl Bullock, one of Williams' neighbors, states that Williams told him that defendant "wanted everything that he had." Billy E. Hunt, who also knew Williams, states that defendant was always mean to Williams. Hunt bought Williams cigarettes because defendant kept all the money and did not give Williams enough money to buy anything. When Williams would come home, defendant "would never try to get him out of the car and would leave him all day and all night drunk. [Defendant] also kept [Williams'] heart medicine away from him."

In general,

> [t]wo classes of trusts arise by operation of law; resulting trusts and constructive trusts. "[T]he creation of a resulting trust involves the application of the doctrine that valuable consideration rather than legal title determines the equitable title resulting from a transaction; whereas a constructive trust ordinarily arises out of the existence of fraud, actual or presumptive — usually involving the violation of a confidential or fiduciary relation — in view of which equity transfers the beneficial title to some person other than the holder of the legal title." [Citations omitted.]

*Leatherman v. Leatherman*, 297 N.C. 618, 621-22, 256 S.E. 2d 793, 795-96 (1979). "[A] resulting trust involves a presumption or supposition of law of an intention to create a trust; whereas a con-

structive trust arises independent of any actual or presumed intention of the parties and is usually imposed contrary to the actual intention of the trustee." *Bowen v. Darden*, 241 N.C. 11, 14, 84 S.E. 2d 289, 292 (1954). *See also Lewis v. Boling*, 42 N.C. App. 597, 605, 257 S.E. 2d 486, 491-92 (1979). *See, generally*, Bogert, *The Law of Trusts and Trustees* Sec. 451 (Rev. 2d Ed., 1977).

In *Link v. Link*, 278 N.C. 181, 185, 179 S.E. 2d 697, 699 (1971), plaintiff-wife sought to have an assignment of stock by her to defendant-husband declared void. The Court stated:

> Where a transferee of property stands in a confidential or fiduciary relationship to the transferor, it is the duty of the transferee to exercise the utmost good faith in the transaction and to disclose to the transferor all material facts relating thereto and his failure to do so constitutes fraud. *Vail v. Vail*, 233 N.C. 109, 63 S.E. 2d 202. Such a relationship "exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." *Abbitt v. Gregory*, 201 N.C. 577, 598, 160 S.E. 896. Intent to deceive is not an essential element of such constructive fraud. *Miller v. Bank*, 234 N.C. 309, 67 S.E. 2d 362. Any transaction between persons so situated is "watched with extreme jealousy and solicitude; and if there is found the slightest trace of undue influence or unfair advantage, redress will be given to the injured party." *Rhodes v. Jones*, 232 N.C. 547, 61 S.E. 2d 725.

> As Justice Sharp said in *Eubanks v. Eubanks*, 273 N.C. 189, 159 S.E. 2d 562, "The relationship between husband and wife is the most confidential of all relationships, and transactions between them, to be valid, must be fair and reasonable."

*Link*, 278 N.C. at 192-93, 179 S.E. 2d at 704. In *Rhodes*, cited by the *Link* court, the Court held that a plaintiff bringing an action for constructive fraud based on breach of a confidential or fiduciary relationship must "allege the facts and circumstances (1) which created the relation of trust and confidence, and (2) led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of the plaintiff." *Rhodes*, 232 N.C. at 549, 61 S.E.

2d at 726. *See also Terry v. Terry*, 302 N.C. 77, 83, 273 S.E. 2d 674, 677 (1981) (constructive fraud arises in circumstances where a confidential relationship exists and the *Rhodes* elements are satisfied).

The forecast of evidence here shows that Williams was a chronic alcoholic who was rarely sober between 1957 and his death in 1966. Williams lacked the capacity to manage his business affairs from about 1960 onward. Defendant, instead of Williams, managed all of the family's affairs. Defendant was mean to Williams and actually violent with him at times; she also apparently wanted everything that her husband had. Williams indicated to plaintiffs and others that plaintiffs would inherit the subject property after his death.

[1] We hold that a court, viewing the foregoing evidence in the light most favorable to plaintiffs, could not properly conclude as a matter of law that plaintiffs have not shown "the slightest trace of undue influence or unfair advantage . . ." by defendant in the 1 November 1960 transaction. *Link, supra*, 278 N.C. at 192, 179 S.E. 2d at 704. Plaintiffs have alleged and established sufficient facts and circumstances to satisfy the *Rhodes* requirements for maintaining an action for constructive fraud based on breach of a confidential relationship. If defendant has committed constructive fraud, based on breach of the confidential relationship of husband and wife, plaintiffs will be entitled to have a constructive trust impressed upon the subject property. *See Leatherman, supra*, 297 N.C. at 621-22, 256 S.E. 2d at 795-96. Accordingly, we hold that the forecast of evidence presents a genuine issue of material fact as to whether plaintiffs are entitled to have a constructive trust impressed upon the subject property.

[2] Unlike the facts in *Cline v. Cline*, 297 N.C. 336, 255 S.E. 2d 399 (1979), however, the facts here do not also give rise to a resulting trust. In *Cline* plaintiff-wife furnished consideration for property deeded to defendant-husband alone when she had been assured previously that she and her husband would own the subject property jointly after they had paid off the mortgage. By contrast, the furnishing of consideration is not at issue here. Plaintiffs' contention that defendant "interfered with Williams'

. . . intent to devise property to his children . . ." suggests undue influence by defendant. Undue influence underlies constructive fraud and would entitle plaintiffs to impression of a constructive trust, not a resulting trust. We thus hold that a resulting trust is not available to plaintiffs.

Defendant contends that N.C. Gen. Stat. 1-56, the ten-year "catch-all" section, bars plaintiffs' claim. We disagree.

[3] Constructive trusts, as distinguished from express trusts, are governed by the ten-year statute of limitations in N.C. Gen. Stat. 1-56. *Cline, supra*, 297 N.C. at 348, 255 S.E. 2d at 406. When the statute of limitations is properly pleaded, the burden of proof is on the party against whom the statute is pleaded to show that the claim is not barred. *Solon Lodge v. Ionic Lodge*, 247 N.C. 310, 316, 101 S.E. 2d 8, 13 (1957). Generally, the bar of the statute of limitations is a mixed question of law and fact. *Id.* at 317, 101 S.E. 2d at 13. "[W]here it clearly appears that plaintiff's claim is barred by the running of the statute of limitations, defendant is entitled to judgment as a matter of law, and summary judgment is appropriate." *Poston v. Morgan-Schultheiss, Inc.*, 46 N.C. App. 321, 323, 265 S.E. 2d 615, 616, *cert. denied*, 301 N.C. 95 (1980).

[4] The issue is when the statute of limitations began to run against plaintiffs' claim for enforcement of a constructive trust on the subject property. Plaintiffs contend the statute of limitations was tolled until they learned in January 1984 that defendant intended to sell the subject property. Defendant contends the statute began running when she took possession of the lands in 1966 following Williams' death. She argues that plaintiffs knew or should have known that defendant's open, continuous and exclusive possession was adverse to any claim by plaintiffs. This contention ordinarily would be correct unless plaintiffs believed defendant was claiming a life estate instead of a fee simple interest in the land.

In this regard plaintiff Brisson states: "I had expected to get some land when [defendant] dies, so my brother and I were willing to wait things out . . . ." This assertion, which is uncontroverted, suggests that plaintiffs may have believed that defendant held a life estate in the subject property with plaintiffs retaining a remainder interest that would vest upon defendant's death. As a life tenant, defendant's open, continuous and ex-

clusive possession of the land after Williams' death in 1966 would not have appeared adverse to plaintiffs, and, standing alone, would have been insufficient to place plaintiffs on notice that she was asserting an adverse claim for purposes of the statute of limitations. *Howell v. Alexander*, 3 N.C. App. 371, 381, 165 S.E. 2d 256, 264 (1969). Further, recordation of the 1 November 1960 deed and contract does not constitute notice to plaintiffs as a matter of law since they "had no cause to be and were not parties to the transaction." *Id.* We thus hold that the forecast of evidence also presents a genuine issue of material fact as to when plaintiffs had notice that defendant was claiming the subject property adversely to them so as to commence the running of the statute of limitations.

For the foregoing reasons, the order is reversed, and the cause is remanded for further proceeding on the issues presented.

Reversed and remanded.

Judges WEBB and JOHNSON concur.