CAROLINE BATCHELDOR, TOM SMITH, JAMES B. SMITH, JOHN B. SMITH, ALLEN SMITH, MARION C. SMITH, AND HARRIET SMITH ANISOWICZ, PLAINTIFFS v. WILLIAM RICHARD BOYD, SR., T. MICHAEL JORDAN, SUCCESSOR ADMINISTRATOR OF THE ESTATE OF J. R. BOYD, JR., BARBARA BURGIN, TOMMY G. BOYD, JR., CAROLYN CLAYTON, EXECUTRIX OF THE ESTATE OF HENRY CLAYTON, AND ROBERT M. CHAFIN AND JOHN LYNDON CHAFIN, CO-EXECUTORS OF THE ESTATE OF ROBERT CHAFIN, DEFENDANTS

No. 9130SC1285

(Filed 15 December 1992)

**Evidence and Witnesses § 2211 (NCI4th); Parent and Child § 1.1 (NCI3d) — right to inherit — legitimation — DNA testing — exhumation order**

The trial court did not err in an action to determine paternity and inheritance rights by permitting the exhumation of the corpse of J. R. Boyd, Jr. for purposes of performing DNA sampling where the court correctly concluded that the information sought was reasonably calculated to lead to admissible evidence and that defendant Boyd had shown good cause to exhume the body as required by N.C.G.S. § 130A-390(b). If a proper foundation is laid, DNA sampling may be admissible as "dependable evidence to the contrary" to rebut the presumption that a child born of a married woman is her husband's child. This ruling will not engender the filing of unnecessary meritless claims, given the substantial evidence presented by defendant Boyd supporting the claim of paternity, and the findings of the trial court on the motion seeking exhumation are applicable to the exhumation only and are not binding on any other issue.

Am Jur 2d, Bastards § 19; Dead Bodies §§ 74-76; Evidence §§ 367, 825, 1104.

Admissibility of DNA identification evidence. 84 ALR4th 313.

Appeal by plaintiffs and defendants Barbara Burgin, Tommy G. Boyd, Jr., Carolyn Clayton, Robert M. Chafin and John Lyndon Chafin from order entered 19 June 1991 by Judge Beverly T. Beal in Haywood County Superior Court. Heard in the Court of Appeals 12 November 1992.

*McLean & Dickson, P.A., by Russell L. McLean III; and Westall,
Gray, Kimel & Connolly, P.A., by Jack W. Westall for
appellants.*

*Brown, Ward, Haynes, Griffin & Seago, P.A., by Randal Seago
for appellee William Richard Boyd, Sr.*

COZORT, Judge.

This appeal is from an order permitting the exhumation of
the corpse of J. R. Boyd, Jr., for the purposes of deoxyribonucleic
acid (DNA) testing of tissue samples to aid in determining the
paternity of defendant William Richard Boyd, Sr. We affirm.

On 17 January 1990, the Haywood County Clerk of Superior
Court appointed William Richard Boyd, Sr., defendant herein, ad-
ministrator of J. R. Boyd, Jr.'s estate. On 23 February 1990, Robert
Chafin and Henry Clayton filed a petition requesting revocation
of defendant Boyd's appointment. After a hearing, the clerk of
superior court removed defendant Boyd as administrator and
substituted T. Michael Jordan. In April 1990 defendant Boyd filed
a complaint stating that he intended to bring a declaratory judg-
ment action to determine inheritance rights and petitioned the
court for permission to depose a seriously ill witness. The court
appointed counsel and set the deposition for 8 May 1990, but the
witness was too ill to be deposed. Plaintiffs herein, alleged heirs
of J. R. Boyd, Jr., filed a declaratory judgment action on 12 June
1990 seeking a determination of whether defendant Boyd is J. R.
Boyd, Jr.'s son and whether he is entitled to share in the estate.
The declaratory judgment action was filed against defendant William
Richard Boyd, Sr., Chafin, Clayton, and others with interests in
line with the plaintiffs.

In November 1990 defendant Boyd filed a motion seeking per-
mission to exhume J. R. Boyd, Jr.'s body in order to perform
DNA sampling and testing to determine the relationship, if any,
between J. R. Boyd, Jr., and defendant Boyd. Judge Marlene Hyatt
denied the request; however, she provided in the order that defend-
ant Boyd could move for a rehearing at the end of February 1991
after the completion of additional discovery related to the exhuma-
tion and DNA testing. The exhumation rehearing was held on 27
May 1991 before Judge Beverly T. Beal. On 19 June 1991, Judge
Beal entered an order, finding the following pertinent facts:

BATCHELDOR v. BOYD

[108 N.C. App. 275 (1992)]

2. J. R. Boyd, Jr., died intestate;

3. Defendant Boyd was born on September 16, 1936, to Mary Kirkpatrick. His original name was William Algernon Kirkpatrick; (Defendant's Exhibit 1). No father's name is shown on the birth certificate in the space provided;

4. There exists a complaint for divorce filed by "Mary K. Jones," against Armistead Jones, filed in Haywood County (Defendant's Exhibit 3). In neither the divorce complaint nor judgment is there an allegation or finding that a child was born to the marriage;

5. Mary K. Jones was Mary Kirkpatrick. She alleged that she and her husband Armistead Jones were married "during the month of August 1935," and lived together "until November 1935," at which time they separated;

6. Boyd family anecdotal history relates that Defendant Boyd was conceived on December 15, 1935 of the union of J. R. Boyd, Jr., and Mary Kirkpatrick (Defendant's Exhibit 5). Dicky [sic] Boyd (Defendant) is referred to in Will of J. R. Boyd, Sr. He served as Co-Executor of the Estate of Bessie Boyd, sister of J. R. Boyd, Jr. (Defendant's Exhibit 8) as Co-Executor of the estate of Daisy Boyd, also sister of J. R. Boyd, Jr. (Defendant's Exhibit 8) in both applications for Letters Dickey [sic] Boyd is referred to as "nephew" of deceased, and listed as a beneficiary of the Wills;

7. J. R. Boyd, Jr. and Mary Kirkpatrick were married on December 22, 1940 (Defendant's Exhibit 9);

8. Defendant Boyd lived with J. R. Boyd, and J. R. Boyd, Jr. held him out in the community to be his son and readily admitted his paternity (Defendant's Exhibits 11, 12);

9. Defendant Boyd changed his name from William Algernon Kirkpatrick to William Richard Boyd by special proceeding in Haywood County in 1958. That proceeding required the posting of a notice of intent to change name at the courthouse (Defendants' Burgin, Tommy G. Boyd, Jr., Clayton and Chafin Exhibit E attached to brief);

10. Mary K. Boyd sought divorce in an action in Florida. She alleged that "no children were born of this marriage."

(Bill of Complaint, certified copy, submitted by Defendants Burgin, T. G. Boyd, Jr., Clayton and Chafin);

11. There is no evidence that Mary Kirkpatrick sought child custody, or support, as opposed to either Armistead Jones or J. R. Boyd, Jr.;

* * * *

14. North Carolina law has recognized blood testing for purposes of establishing or disproving parentage (G.S. 8-50.1). DNA tests and comparisons have been developed and are presented through the testimony of qualified geneticists;

15. DNA genetic testing for the purpose of determining parentage has been established as a reliable process; the tests have the power to exclude an individual as the parent or child of another; statistical probability of inclusion is presentable;

16. If the remains to be tested are affected by the embalming process or ground water, the effect will be to prevent testing, or render testing obviously inconclusive; the vault was designed to be air and water tight;

17. Valid testing, analysis and reporting comparing DNA obtained from a dead human body and from the blood of a living human can be accomplished (See also Defendant Boyd's Exhibits 17 and 18; see Dr. Ryal's testimony);

Based upon the findings of fact, Judge Beal concluded:

(2) The information sought is reasonably calculated to lead to the discovery of admissible evidence.

(3) DNA testing for parentage is established as reliable. The complexities related to obtaining and testing specimens of bone, tissue and blood from a dead body are not so insurmountable as to preclude the attempt.

(4) Good cause has been shown to exhume the body of J. R. Boyd, Jr.

(5) The just and orderly disposition of a decedent's property is a lawful state interest, the importance of which outweighs the natural and proper respect for the place of interment of the dead.

BATCHELDOR v. BOYD

[108 N.C. App. 275 (1992)]

It is therefore ORDERED that the body of J. R. Boyd, Jr. be exhumed and that DNA testing be conducted . . . .

On 18 July 1991, notice of appeal was filed by plaintiffs and those defendants with interests in line with the plaintiffs, who shall be known hereinafter as "Appellants." Appellants obtained from Judge Hyatt a stay of Judge Beal's order of exhumation.

On appeal appellants argue that the trial court erred in issuing the order of exhumation because the results of the DNA testing are not admissible for the purpose of establishing a right to inherit from a decedent's estate. Defendant Boyd counters that results of DNA testing are admissible to prove that he was legitimated pursuant to N.C. Gen. Stat. § 49-12 (1984) by the subsequent marriage of his mother to J. R. Boyd, Jr. As a legitimate child, defendant argues, he is entitled to share in his father's estate.

N.C. Gen. Stat. § 49-12 provides:

When the mother of any child *born out of wedlock* and the reputed father of such child shall intermarry or shall have intermarried at any time after the birth of such child, the child shall, in all respects after such intermarriage be deemed and held to be legitimate and the child shall be entitled, by succession, inheritance or distribution, to real and personal property by, through, and from his father and mother as if such child had been born in lawful wedlock. (Emphasis added.)

To be entitled to share in J. R. Boyd, Jr.'s estate pursuant to § 49-12, defendant Boyd must present evidence that he was "born out of wedlock." "[T]he phrase, 'born out of wedlock,' should refer 'to the status of the parents of the child in relation to each other.' 'A child born to a married woman, but begotten by one other than her husband, is a child "born out of wedlock" . . . .'" *Matter of Legitimation of Locklear by Jones*, 314 N.C. 412, 418, 334 S.E.2d 46, 50 (1985) (citations omitted). In order to show that he was born out of wedlock, defendant Boyd must rebut the presumption recognized by North Carolina law that the child of a married woman is her husband's child. *See Eubanks v. Eubanks*, 273 N.C. 189, 197, 159 S.E.2d 562 (1968).

In *Wright v. Wright*, 281 N.C. 159, 188 S.E.2d 317 (1972), the North Carolina Supreme Court recognized the admissibility of blood-grouping tests to rebut the presumption. The Court first

BATCHELDOR v. BOYD

[108 N.C. App. 275 (1992)]

determined that language in the *Eubanks* case did not prohibit the introduction of blood-grouping tests.

> The opinion in *Eubanks* contains this statement: 'If there was access, there is a conclusive presumption that the child was lawfully begotten in wedlock.' Taken literally and out of context, the quoted statement would disallow evidence even of impotency or physical or racial differences to rebut the presumption. However, the topic sentence of the paragraph in which the above statement is found demonstrates the real rationale of the rule: 'When a child is born in wedlock, the law presumes it to be legitimate, and this presumption can be rebutted only by facts and circumstances which show that the husband could not have been the father, *as that* he was impotent or could not have had access to his wife.' ([Their] italics.) Impotency and nonaccess are set out therein as examples of types of evidence that would 'show that the husband could not have been the father.' Since the results of blood-grouping tests would be significant only if they tended to show that defendant herein could not have been the father, we find nothing in *Eubanks* that would preclude their admission in evidence.

*Id.* at 171-72, 188 S.E.2d at 325 (citations omitted) (emphasis in original). The Court further reasoned that

> [p]rior to the discovery and perfection of the blood-grouping test, the only kinds of evidence which showed to even an approximate certainty that a husband was not the father of his wife's child were evidence of impotency, racial or other distinctive physical differences, or nonaccess during the probable time of conception. Although we continue to recognize its primary importance in preserving the status of legitimacy of children born in wedlock, *this presumption must give way before dependable evidence to the contrary.* Blood-grouping tests which show that a man cannot be the father of a child are perhaps the most dependable evidence we have known.

*Id.* at 172, 188 S.E.2d at 325-26 (emphasis added).

Following the reasoning in *Wright*, we conclude that if a proper foundation is laid, DNA sampling may be admissible as "dependable evidence to the contrary" to rebut the presumption that a child born of a married woman is her husband's child. The legitimation

statutes and case law contemplate the advancement of scientific techniques. Reliable direct evidence that the mother's husband is not the father of a child cannot be ignored. The North Carolina Supreme Court has recognized that DNA profile testing is generally admissible as an established technique considered to be reliable within the scientific community. *See State v. Pennington*, 327 N.C. 89, 101, 393 S.E.2d 847, 854 (1990).

In the case below, if the trial court finds the DNA sampling results admissible, the results may be used to show that J. R. Boyd, Jr., and not Silas Armistead Jones was defendant Boyd's father, thereby rebutting the presumption and simultaneously offering evidence that defendant Boyd was "born out of wedlock" within the meaning of N.C. Gen. Stat. § 49-12. Defendant Boyd then could present further evidence that he was legitimated pursuant to § 49-12 when his mother later married J. R. Boyd, Jr. Likewise, if the DNA testing yields evidence that J. R. Boyd, Jr., was not the father of defendant, the evidence would be admissible for that purpose. Accordingly, we conclude on the facts presented in this case that the trial court did not err in permitting the exhumation of the corpse of J. R. Boyd, Jr., for purposes of performing DNA sampling. The trial court correctly concluded that the information sought was reasonably calculated to lead to admissible evidence and that defendant Boyd had shown good cause to exhume the body as required by N.C. Gen. Stat. § 130A-390(b) (Cum. Supp. 1991).

Appellants next argue that if the exhumation is permitted in this case, the courts will be flooded with petitions for exhumations from would-be heirs. That argument has no merit against the facts below. Defendant Boyd presented substantial evidence to the trial court to support his claim that he is indeed J. R. Boyd, Jr.'s son. The evidence includes, but is not limited to, the following: Defendant Boyd was born in September 1936. In her divorce complaint, Mary Kirkpatrick stated that she had lived apart from Silas Jones since November 1935. The complaint made no mention of children born of the marriage. Mary married J. R. Boyd, Jr., in December 1940. When Mary was unable to care for her son (defendant Boyd) because of health problems, Bessie and Daisy Boyd (sisters to J. R. Boyd, Jr.) took care of defendant Boyd and raised him in J. R. Boyd, Sr.'s home. In 1942, J. R. Boyd, Sr., executed a will in which he made "provision for the education of Dicky Boyd, the son of my son, James R. Boyd, Jr. and Mary

BATCHELDOR v. BOYD

[108 N.C. App. 275 (1992)]

Kirkpatrick Boyd." In 1958, defendant Boyd changed his name from William Algernon Kirkpatrick to William Richard Boyd. In applications for letters testamentary in the estates of Bessie and Daisy Boyd submitted in 1968 and 1977 respectively, J. R. Boyd, Jr., was listed as "brother" and defendant Boyd was listed as "nephew." The Haywood County Clerk of Superior Court initially appointed defendant Boyd as the administrator of J. R. Boyd, Jr.'s estate. Given this substantial evidence, we do not believe our ruling today will engender the filing of unnecessary meritless claims. To the contrary, in those cases, such as the one below, where much evidence of paternity already exists, the "floodgate of litigation" argument should not be allowed to deter the court from its search for the truth.

Lastly, appellants contend the trial court's order is in error because the findings of fact can be construed to be binding as to ultimate issues yet to be decided in the case. Our reading of the record and the order in question leads us to the conclusion that the contested findings were made solely for the purpose of ruling on the exhumation request. Nonetheless, to prevent the possibility of unfairness or confusion, we hold that Judge Beal's findings are applicable to the exhumation issue only and are not binding on any subsequent factfinder on any other issue.

Lastly, we dissolve the stay filed by Judge Hyatt on 2 July 1991. As aptly pointed out by defendant Boyd in a motion filed in this court, further delay in exhuming the body to obtain the requested samples will reduce the likelihood of obtaining satisfactory tissue samples because of the perishable nature of the corpse.

The order below is affirmed, and the stay is dissolved.

Affirmed.

Judges JOHNSON and LEWIS concur.